Wesley Lanier RICHARDS, Appellant

v.

The STATE of Texas, Appellee.

No. 14–03–00194–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 28, 2004.

Rehearing Overruled Dec. 23, 2004.

Lewis Dickson, Houston, for appellant.

Carol M. Cameron, Houston, for appellee.

En Banc Court consists of Chief Justice HEDGES, Justices YATES, ANDERSON, HUDSON, FOWLER, FROST, SEYMORE and GUZMAN. Justice EDELMAN concurring in result only.

## EN BANC OPINION

WANDA McKEE FOWLER, Justice.

Appellant pleaded no contest to misdemeanor possession of a controlled substance and the trial court assessed punishment at six months' deferred adjudication. In six issues, appellant contends the trial court erred in denying his motion to suppress evidence because (1) he should have been given alternatives to having his car impounded, (2) the applicable written guidelines of the Houston Police Department are unconstitutionally vague, (3) the police officers unconstitutionally acted in bad faith by impounding his car, and (4) the search of his car was unconstitutional because it was not conducted pursuant to any established inventory guidelines. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 10, 2001, Houston Police Department Officers Terry Shane Seagler and David Myers were working on a special assignment of guarding the mayor's house on Potomac. The officers were in plain clothes and in an unmarked pickup truck. Officer Seagler observed appellant's car approaching and saw a passenger, Steve Douglas, throw a pumpkin at a parked car. The pumpkin damaged the parked car's trunk and left tail light.

The officers pursued appellant and observed him run a stop sign, fail to signal a turn, speed, and run a stop light. The officers caught up with appellant and Officer Seagler identified himself as a police officer. Appellant then stopped his car on

Russet, a dead-end street. The officers requested backup and interviewed appellant, Douglas, and two additional juvenile passengers.

Officers David Giannavola and Joseph Antonio Mora, Jr. independently arrived in response to the request for backup. The officers determined that Officers Seagler and Myers would complete the report and file charges, and Officers Giannavola and Mora would transport appellant and Douglas to jail. Officers Seagler and Myers returned to the scene on Potomac.

Officer Mora arrested appellant for traffic violations, arrested Douglas for criminal mischief, and took the juveniles into custody for curfew violations. Officer Mora observed that appellant's car was illegally parked because it was not within eighteen inches of the curb. He decided to impound and tow the car and called a wrecker to the scene.

Before appellant's car was towed, Officer Mora conducted an inventory. He unlocked the car's trunk with the key and found a closed red backpack. He opened the backpack and found marijuana and what was later determined to be peyote. Appellant indicated the backpack was his and Officer Mora arrested him for possession of marijuana.

Appellant was initially charged with misdemeanor possession of marijuana. He moved to suppress the evidence obtained through the inventory of his car and a suppression hearing was conducted. The State dropped the misdemeanor charge in

favor of proceeding on a felony charge of possession of peyote.

Appellant again moved to suppress the evidence obtained through the inventory of his car. Because the relevant facts had not changed, the parties agreed to have the motion decided on the basis of the transcript from the prior misdemeanor hearing. The trial court denied appellant's motion to suppress.

## ANALYSIS

In six issues, appellant contends the trial court erred in denying his motion to suppress because (1) he should have been given alternatives to having his car impounded, (2) the applicable written guidelines of the Houston Police Department are unconstitutionally vague, (3) the officers unconstitutionally acted in bad faith by impounding his car, and (4) the search of his car was unconstitutional because it was not conducted pursuant to any established inventory guidelines.

### I. Standard of Review

We reverse a trial court's ruling on a motion to suppress only if it abused its discretion.[1] *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996). The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.* We view the evidence in the light most favorable to the trial court's ruling, and must sustain the ruling if it is reasonably supported by

1. Appellant argued that de novo review would be appropriate because the trial court ruled based on the transcript of the misdemeanor hearing, and the trial court was therefore in no better position than we are to judge the credibility of the witnesses. Appellant relied on a case in which de novo review was held to be appropriate for a similar reason when the hearing was held based on affidavits. *See State v. West*, 20 S.W.3d 867, 870–71 (Tex.

App.-Dallas 2000, pet. ref'd); *see also Guzman v. State*, 955 S.W.2d 85, 87–89 (Tex. Crim.App.1997). The Court of Criminal Appeals has clarified its position in *Guzman*, however, and held that a deferential standard of review is appropriate when the trial court makes its decision based solely on affidavits. *Manzi v. State*, 88 S.W.3d 240, 243–44 (Tex. Crim.App.2002). In light of this ruling we will apply a deferential standard of review.

the record and correct on any theory of law applicable to the case.

## II. Absence of a Warrant

The State first argues that it had no burden of proving the legality of the search because appellant did not meet his burden of proving the search was performed without a warrant. The only direct indication that the search was performed without a warrant was the misdemeanor hearing judge's statement that, "It's a warrantless arrest. The State's going to go forward."

 When a defendant seeks to suppress evidence on the basis that a search was performed in violation of the Fourth Amendment, the initial burden is on the defendant to rebut the presumption of proper police conduct. *Russell v. State*, 717 S.W.2d 7, 9 (Tex.Crim.App.1986). A defendant must meet that burden by demonstrating the search was performed without a warrant. *Id.* Once the defendant rebuts this presumption, the burden of proof shifts to the State to either produce evidence of a warrant or prove the reasonableness of the search. *Id.* at 9–10.

We have previously held that a defendant must meet his burden by producing affirmative evidence showing there was no warrant; circumstantial evidence will not suffice. *See, e.g., Telshow v. State*, 964 S.W.2d 303, 307 (Tex.App.-Houston [14th Dist.] 1998, no pet.); *White v. State*, 871 S.W.2d 833, 836–37 (Tex.App.-Houston [14th Dist.] 1994, no pet.).[2] In the case most factually similar to this one, we held that the defendant did not meet his burden

even though the trial court impliedly found he did so and the prosecutor stated during argument that the arrest was warrantless. *See Highwarden v. State*, 846 S.W.2d 479, 481 & n. 2 (Tex.App.-Houston [14th Dist.] 1993), *pet. dism'd as improvidently granted*, 871 S.W.2d 726 (Tex.Crim.App.1994). Under this line of authority, appellant would not have met his burden even though the trial court impliedly found he did so and the trial court stated the arrest was warrantless. However, this line of authority is not without criticism. *See Gulley v. State*, No. 14–00–00310–CR, 2001 WL 1103248, at *1–2 (Tex.App.-Houston [14th Dist.] Sept. 20, 2001, pet. ref'd) (Murphy, J., dissenting) (not designated for publication); *Sims v. State*, 980 S.W.2d 538, 541 (Tex.App.-Beaumont 1998, no pet.) (Burgess, J., concurring) ("Only the Houston courts have adopted this rule that the absence of a warrant must be established by direct evidence."). In light of this criticism and the Court of Criminal Appeals' recent decision in *Bishop v. State*, 85 S.W.3d 819 (Tex.Crim.App.2002), we will revisit the issue.

In *Russell*, the key Court of Criminal Appeals case on this issue, it appears the defendant met his burden without producing affirmative evidence showing there was no warrant. *See Russell*, 717 S.W.2d at 10–13. The Court wrote, "From Officer Graves' testimony it is obvious that no warrant was obtained." *Id.* at 10. However, at no point in the officer's testimony did the officer state the arrest was warrantless, nor was the officer asked wheth-

---

**2.** It appears that we relaxed this requirement in at least one recent opinion. *See McGee v. State*, 23 S.W.3d 156, 162 (Tex.App.-Houston [14th Dist.] 2000), *rev'd on other grounds*, 105 S.W.3d 609. (Tex.Crim.App.2003) ("[I]t is clear from the record that appellant's arrest was warrantless."). The *McGee* case dealt with the issue only in passing, however, and did not detail what evidence demonstrated the arrest was warrantless. *See id.* Nor did the *McGee* case discuss our holdings in cases such as *Telshow*; it relied solely on the Court of Criminal Appeals' opinion in *Russell*. *See id.* at 161.

er it was warrantless.[3] *Id.* at 11–13. Further, it appears the Court's decision was based on circumstantial evidence from its statement that the lack of a warrant was *obvious* based on the testimony. *See id.* at 10; *see also Sims,* 980 S.W.2d at 541 (Burgess, J., concurring). Thus, our requirement that the showing be based on affirmative evidence appears to be more stringent than the requirement of the Court of Criminal Appeals.

In *Bishop,* the Court of Criminal Appeals reversed this court's decision that the defendant failed to meet her burden because she failed to produce affirmative evidence showing there was no warrant. *Bishop,* 85 S.W.3d at 822. The appellant only claimed that the arrest was warrantless in her unsworn motion to suppress; her affidavit contained no such statement. *Bishop v. State,* No. 14–00–00792–CR, 2001 WL 893309, at *2 (Tex.App.-Houston [14th Dist.] Aug. 9, 2001) (not designated for publication), *rev'd,* 85 S.W.3d 819. Relying on *Telshow,* this court held that she failed to produce any affirmative evidence because an unsworn motion is not evidence. *Id.* The Court of Criminal Appeals reversed, holding that the trial court should have considered the allegation in the motion to suppress. *Bishop,* 85 S.W.3d at 822. The *Bishop* case is not directly on point, because it turned on the issue of whether an unsworn motion to suppress should be considered in addition to the affidavits when determining whether the defendant had shown the arrest was without a warrant. *See id.* However, it is an indication that a defendant can meet the burden of showing there was no warrant with less than affirmative evidence.

■ Based on *Russell* and *Bishop,* we hold that a defendant can meet his burden of demonstrating that an arrest was performed without a warrant with circumstantial evidence. To the extent that *Telshow* and similar cases hold to the contrary, they are overruled. *See Telshow,* 964 S.W.2d at 307; *White v. State,* 871 S.W.2d 833, 836 (Tex.App.-Houston [14th Dist.] 1994, no pet.); *Highwarden,* 846 S.W.2d at 481 & n. 2; *Johnson v. State,* 834 S.W.2d 121, 123–24 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd). We therefore turn to the record to determine if it demonstrates the arrest was performed without a warrant.

■ To begin with, the misdemeanor hearing judge stated that the case involved a warrantless arrest and she impliedly found so when she placed the burden of proceeding on the State. The State accepted this burden without objection. Although not evidence, this is a rather significant indication that the search was performed without a warrant. When the judge has already impliedly found that police searched a car without a warrant, requiring the defendant to produce additional evidence that the search was performed without a warrant would accomplish little other than setting a procedural trap for the unwary. *See Allen v. State,* 552 S.W.2d 843, 846 (Tex.Crim.App.1977) ("The law does not require a useless thing to be done.").

■ The evidence in the record also demonstrates the search was performed without a warrant. Officers Seagler and Myers pursued appellant because they saw an occupant in the car appellant was driving throw a pumpkin at a parked car. Officer Seagler testified that neither he nor Officer Myers noted the license plate

---

3. The Court states that the appendix contains "[t]he only testimony concerning the return of appellant to the police station." *Russell,* 717 S.W.2d at 9 n. 3. Thus, while the appendix does not contain the full testimony of the officer, it apparently contains all of the evidence relevant to whether the arrest was warrantless.

of the car until after appellant had been stopped and that he only "quickly glanced" at appellant's driver's license to make sure it was valid. He also testified that appellant was not free to leave at that time, indicating that appellant was already under arrest. *See Kunkel v. State*, 46 S.W.3d 328, 330 (Tex.App.-Houston [14 Dist.] 2001, pet. ref'd) ("An arrest is complete when a person's liberty of movement is restricted or restrained."). From this evidence it is obvious that the arresting officers did not arrest appellant pursuant to a warrant.[4] We therefore hold appellant met his burden of showing the arrest was performed without a warrant and address his complaints.

## III. Alternatives to Impoundment

In his first three issues, appellant contends the trial court erred in denying his motion to suppress because he was not given alternatives to having his car impounded. The three specific alternatives appellant argues he was not given were (1) leaving his car legally parked at the scene, (2) releasing his car to one of the passengers, and (3) leaving the car at the nearby home of one of the passengers.

To ensure the validity of its impoundments, the Houston Police Department has established a written policy for its officers to follow when the owner is taken into custody. That policy provides the following:

> Prisoners are responsible for the disposition of their vehicles unless such vehicles are subject to seizure or needed as evidence. Prisoners will choose one of the following alternatives for the disposition of their vehicles:
>
> a. *Release to Another Party.* The vehicle may be released to a third

person. Officers must ensure the third person has a valid driver's license and insurance before being allowed to operate the vehicle.

> b. *Leave Vehicle Parked.* Vehicles may be left at the scene if they are legally parked. If the vehicle is to be left on private property, permission should be obtained from the property's owner or manager.
>
> c. *Prisoner–Requested Tow.* The vehicle may be towed at the prisoner's expense.

HOUSTON POLICE DEPARTMENT, GENERAL ORDER no. 600–10, § 7 (Nov. 19, 1999). The first two alternatives are also required by common law. *See, e.g., Stephen v. State*, 677 S.W.2d 42, 44 n. 1 (Tex.Crim.App.1984) (stating the police should respect a prisoner's wish to leave his car with a companion who had a valid driver's license); *Josey v. State*, 981 S.W.2d 831, 842–43 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd) (examining the availability of both options); *Smith v. State*, 759 S.W.2d 163, 167 (Tex. App.-Houston [14th Dist.] 1988, pet. ref'd) (holding that the prisoner should have been allowed to choose whether to leave his car parked in a public parking lot). Appellant was thus entitled to either of them regardless of police procedure. *See Stephen*, 677 S.W.2d at 44 n. 1 (holding that a policy that only allowed release to relatives was "much too narrow"). The third alternative, a prisoner-requested tow, was not argued to the attention of the trial court, so we will not consider it here. *See* TEX.R.APP. P. 33.1(a).

The policy states that a police-authorized tow is permissible when "the prisoner is not present or is medically incapable of or unwilling to select from [these] alterna-

---

4. We also note that the question is only whether the officers arrested appellant pursuant to a warrant, not whether there were any outstanding warrants for appellant. *See Johnson v. State*, 834 S.W.2d 121, 124 n. 3 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd).

tives." GENERAL ORDER no. 600–10, § 7. The policy does not address a situation when none of the alternatives are available, presumably because whenever a police-authorized tow is possible a prisoner-requested tow will also be possible. However, we hold that a police-authorized tow is also permissible when a prisoner is incapable, for other than medical reasons, of selecting from these alternatives.

■ First, appellant argues he should have been permitted to leave his car legally parked at the scene. Two officers testified that the car was not legally parked because it was more than eighteen inches from the curb. Although appellant contends the car could have been moved several inches closer to the curb and thus legally parked, the police were not required to offer this option. *See Josey v. State,* 981 S.W.2d 831, 843 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd). In *Josey,* the defendant's car could have been moved so that it was safely parked on the grass by the side of the road, but at the time of the impoundment the officers did not know who owned the car and thus could not determine if the owner would have preferred to leave the car parked there as an alternative to impoundment. *Id.* Similarly, the officers here did not know who owned the car driven by appellant. The evidence in the record indicates that the car had been rented, but there is no evidence that the officers knew at the time of impoundment that the car had been rented to appellant, or even whether it was in fact rented to appellant. Therefore, there was no "objectively demonstrable evidence that [the alternative], did, in fact, exist." *Id.* (quoting *Mayberry v. State,* 830 S.W.2d 176, 180 (Tex.App.-Dallas 1992, pet ref'd)).

■ Second, appellant argues he should have been allowed to release the car to one of his passengers. The two passengers other than appellant and Douglas, who was under arrest for criminal mischief, were both juveniles. Although there was conflicting testimony as to whether appellant was pulled over after midnight or shortly before midnight, the judge was to determine the weight to give conflicting testimony. We cannot say that it was an abuse of discretion for the trial court to determine that the impoundment occurred after midnight and that the juvenile passengers were unable to take possession of the car due to the midnight curfew. Additionally, there is again no evidence that the officers knew at the time of impoundment that the car had been rented to appellant.[5] *Josey,* 981 S.W.2d at 843.

■ Third, appellant argues that he should have been allowed to leave the car at the nearby home of one of the passengers. However, parking the car at a nearby home is neither an option under the police policy or the common law. *See* GENERAL ORDER no. 600–10, § 7; *Mayberry v. State,* 830 S.W.2d 176, 180 (Tex.App.-Dallas 1992, pet. ref'd) ("It was not incumbent upon the officers to locate the occupant of the house to determine whether appellant's car could remain in the driveway."). Further, the police were not required to allow either appellant or the passenger to move the car to the nearby home for the same reasons the first two alternatives were not available.

Because none of the alternatives argued at the trial court by appellant were available, the impoundment of his car was permissible. We overrule appellant's first three issues.

---

5. Nor is there any evidence that the rental agreement would have permitted the car be-

ing released to one of the juvenile passengers.

## IV. Vagueness

In his fourth issue, appellant contends that the police guideline that "[v]ehicles may be left at the scene if they are legally parked" is impermissibly vague. Appellant raises the question of whether this guideline requires that the car already be legally parked at the time of the impoundment or whether the guideline permits a car be moved so that it is legally parked. However, we do not need to resolve this question.

The common law already recognizes the possibility that a car may be moved in order to be left legally parked if it is reasonable to do so. *See Josey,* 981 S.W.2d at 843. In *Josey,* the impoundment was upheld because the officers were unaware of the owner of the vehicle, not because it would have been unreasonable to move the car from the road to the grass next to the road. *Id.* Because the common law recognizes that a car may be moved in order to be left legally parked, it is of no consequence whether the police guideline purports to limit that right. *See Benavides v. State,* 600 S.W.2d 809, 812 (Tex.Crim.App.1980) ("[T]he Fourth Amendment protection against seizures cannot be whittled away by a police regulation.").

Although we agree with appellant that a car may be moved in order to be left legally parked if it is reasonable to do so, for the reason stated in section III, *supra,* that alternative was not available to appellant. We overrule appellant's fourth issue.

## V. Bad Faith

In his fifth issue, appellant contends the officers impounded his car in bad faith.[6] Appellant alleges the arresting officers demonstrated bad behavior in (1) directing appellant to stop the car, (2) instructing appellant to move the car to the opposite side of the street, (3) blocking the car and forcing appellant to stop when he was moving it to the opposite side of the street, (4) criticizing appellant's parking as not being "technically legal," (5) failing to present appellant with the alternatives provided by the department policy, (6) ignoring the alternative of leaving the car at the passenger's house, (7) refusing to allow the car to be moved in order to be legally parked, (8) holding the passengers during the investigation and thereby denying appellant the opportunity to release the car to one of them, and (9) towing the car to the scene of the incident.

As we have already held, however, the alternatives of releasing the car to a passenger and allowing the car to be left legally parked were unavailable. The officers could not have acted in bad faith in failing to offer unavailable options. Although there is some evidence the officers did not offer the alternatives because they were unaware of the policy, such ignorance would not rise to the level of bad faith. We overrule appellant's fifth issue.

## VI. Guidelines

In his sixth issue, appellant contends the inventory search of the car's trunk and the backpack were not conducted pursuant to any established department guidelines. The department policy provides,

> Whenever a prisoner authorizes a nonconsent tow, the officer will personally

---

6. The authority cited by appellant states that an inventory search, not an impoundment, may be invalidated by bad faith. *See Colorado v. Bertine,* 479 U.S. 367, 372–73, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *Trujillo v. State,* 952 S.W.2d 879 (Tex.App.-Dallas 1997, no writ.). Because the evidence does not indicate that the officers acted in bad faith, we do not need to address the issue of whether an impoundment may also be invalidated by bad faith.

conduct an inventory of the vehicle and will complete the *Towed Vehicle Disposition Record* form. A detailed inventory list will be written on the form. Officers must be specific in identifying inventoried items. General terms such as *miscellaneous property* will not be used.

GENERAL ORDER no. 600–10, § 7. The policy does not specifically provide whether officers are authorized to search locked trunks or closed backpacks.

 Either standardized criteria or established routine must regulate the opening of closed containers during an inventory search. *Florida v. Wells*, 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990); *Moberg v. State*, 810 S.W.2d 190, 195 (Tex. Crim.App.1991) (quoting *Wells*). The criteria or routine regulating inventory searches must be designed to produce an inventory and not serve as "a ruse for a general rummaging in order to discover incriminating evidence." *Wells*, 495 U.S. at 4, 110 S.Ct. 1632; *see also Moberg*, 810 S.W.2d at 196.

 The officer performing the inventory testified that, although there was no written guideline, he was trained to inventory any container he had access to, including a locked trunk if he has the key for it.[7] Thus, although there is apparently no written policy governing inventory searches of closed containers, there is evidence of an established routine governing the opening of closed containers. The trial court therefore did not abuse its discretion in finding that the inventory search was permissible.

Further, there is no evidence that the search was a ruse to discover incriminating evidence; searching the locked trunk and backpack furthered the purpose of allowing inventory searches. "[I]nventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Colorado v. Bertine*, 479 U.S. 367, 372, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). The opening and inventory of easily-accessible containers serves both to protect the owner's property and to insure against false claims. *See Illinois v. Lafayette*, 462 U.S. 640, 647–48, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983) (holding the opening and inventory of a shoulder bag was reasonable despite the possible alternative of securing the bag as a whole). We overrule appellant's sixth issue.

We affirm the judgment of the trial court.

Justice EDELMAN concurred in result only.

---

7. The officer's testimony was,
 Q: Do you have any guidelines for the trunk?
 A: Yes. If the ignition key goes with the vehicle, if it opens the trunk, I inventory that. Any access I inventory.

 Q: Excuse me—
 Court: Hold on. I get to talk. And you don't get the interrupt me. That's a guideline?
 A: That's how I was trained.