Affirmed on Remand and Memorandum Opinion filed May 31, 2007








Affirmed on Remand and Memorandum Opinion filed May 31, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-01-01176-CR

____________

 

ROBERT EDWIN KERCHO, Appellant

 

V.

 

STATE OF TEXAS, Appellee

 



 

On Appeal from the County
Criminal Court at Law No. 5

Harris County, Texas

Trial Court Cause No. 1057265

 



 

M E M O R A N D U M    O P I N I O N








Appellant Robert Edwin Kercho challenges his conviction for
driving while intoxicated.  In three issues, Kercho argues the trial court
improperly denied his two motions to suppress.  The State responds that Kercho
failed to preserve error, or alternatively, the trial court=s rulings are
correct.  Although we agree that Kercho preserved his arguments for appellate
review, we affirm.  Kercho=s motion to suppress was based on the
premise that the State lacked probable cause for his warrantless arrest because
the prosecutor presented no evidence that appellant failed field sobriety tests
and did not link appellant=s unsafe driving to his intoxication. 
Because the trial court could properly have found that the arresting officer
reached his conclusions based on other first-hand observations of common signs
of intoxication, we hold the arrest was supported by probable cause.  With
regard to Kercho=s supplemental motion to suppress evidence
relating to his breath test, we further hold the trial court=s implied findings
of fact are supported by the evidence.         

I.  Factual and Procedural History

Robert
Edwin Kercho was arrested for driving while intoxicated on May 1, 2001. 
Houston police officers John Miller and Craig Bellamy observed Kercho driving
fifty-one m.p.h. in a thirty-five m.p.h. zone and weaving out of his lane
without signaling.  Bellamy stopped Kercho and noticed a strong odor of
alcoholic beverage on Kercho=s breath.  According to Bellamy, Kercho=s eyes were red and his movements
were slowed.  Bellamy administered field sobriety tests, including the
horizontal gaze nystagmus (AHGN@) test.  He concluded that Kercho had lost the normal use of
his mental and physical faculties and was not able to drive safely.  Bellamy
arrested Kercho, and Officer Ray Cibulski transported him to the police
station.  After Cibulski read Kercho statutory warnings, Kercho agreed to take
a breath test.  Using the Intoxilyzer 5000, Cibulski administered breath
tests.  Each test indicated that Kercho had a blood alcohol level well in
excess of legal limits.








As
relevant to this appeal, Kercho filed a motion to suppress on the grounds that
evidence was acquired without his consent during his warrantless arrest.  This
motion was supported by Kercho=s affidavit attesting that he was arrested without a
warrant.  Kercho also filed a supplemental motion to suppress his breath test
results on the grounds that (a) the State=s expert witness could not reliably
extrapolate from the results to determine his blood-alcohol concentration at
the time he was driving, and (b) the test was not performed in accordance with
governing regulations.  At a combined evidentiary hearing on both motions, the
State offered to stipulate that Kercho=s arrest was warrantless.  Although
Kercho rejected the stipulation, it was accepted by the trial court.  After the
hearing, the trial court denied Kercho=s motion to suppress and stated that
it refused to rule on the supplemental motion to suppress.  Kercho entered a
negotiated plea of guilty, and the trial court imposed a 180-day suspended
sentence, one year of community supervision, a fine of $300.00, and court costs
of $265.25.  Kercho=s appeal ensued.[1]

II.  Issues

In his
first issue, Kercho argues that the trial court erred in denying his first
motion to suppress evidence because the State failed to demonstrate that police
had probable cause for his arrest.  In his second issue, Kercho contends that
the trial court erred in denying his supplemental motion to suppress because
the State failed to demonstrate sufficient evidence upon which its expert could
base a scientifically reliable opinion concerning retrograde extrapolation. 
Finally, Kercho argues in his third issue that the trial court erred in denying
his supplemental motion to suppress because the State failed to establish that
Kercho=s breath test was conducted in
accordance with governing regulations.

III.  Standard of Review








The
trial court is the sole finder of fact at a suppression hearing, and is
therefore responsible for evaluating witness testimony and credibility.  Torres v. State, 182 S.W.3d 899,
902 (Tex. Crim. App. 2005) (en banc).  Accordingly, we therefore afford great deference to a trial
court=s determination of historical facts. 
Id.  When no written findings are stated or requested, we must uphold
the ruling on any applicable theory of law that is supported by the evidence
when viewed in the light most favorable to the trial court=s ruling.  State v. Kelly, 204
S.W.3d 808, 818B19 (Tex. Crim. App. 2006); State v. Ross, 32 S.W.3d
853, 855B56 (Tex. Crim. App. 2000) (en banc). 
We
review the trial court=s legal ruling de novo unless the
implied fact findings supported by the record are also dispositive of the legal
ruling.  Kelly, 204 S.W.3d at 818B19.  

IV.  Analysis

A.      Motion to
Suppress

The trial court=s ruling on Kercho=s initial motion
to suppress is premised on the court=s conclusion that
Kercho=s arrest was based
on probable cause.  Probable cause for a warrantless arrest is determined by
reviewing the Atotality of the circumstances.@  Torres,
182 S.W.3d at 902.  Specifically, A[p]robable cause
for a warrantless arrest requires that the officer have a reasonable belief
that, based on facts and circumstances within the officer=s personal knowledge,
or of which the officer has reasonably trustworthy information, an offense has
been committed . . . .@  Id. (citations omitted).

1.       Preservation
of Error

With regard to the trial court=s denial of Kercho=s original motion
to suppress, the State contends that Kercho failed to preserve error, if any,
because he produced no evidence that his arrest was warrantless.  In addition,
the State argues that Kercho invited error by refusing to accept the State=s stipulation that
the arrest was warrantless.  








These arguments overlook relevant facts.  Kercho never
disputed that his arrest was warrantless, and he offered both a judicial
admission and a sworn affidavit attesting to his warrantless arrest.  In both
his motion to suppress and his supporting affidavit, Kercho insisted that he
was arrested without a warrant.  Although Kercho=s defense counsel
refused the State=s offered stipulation, no stipulation was
required to establish this uncontested fact.[2] 
We conclude the trial court properly found that the arrest was warrantless and
shifted the burden of proof to the State to prove the arrest was made with
probable cause.  See Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim. App.
2005) (A[T]he suppression
hearing began with the State stipulating that this case involved a warrantless
arrest . . . . [which] shifted the burden of proof to the
State . . . .@); see also Richards v. State, 150
S.W.3d 762, 767 (Tex. App.CHouston [14th Dist.] 2004, pet. ref=d) (en banc)
(holding that a defendant may rely on circumstantial evidence to show an arrest
was warrantless).  

The State=s argument that Kercho invited error by
rejecting the proposed stipulation is also without merit.  Under the doctrine
of invited error, a party may not complain on appeal about Athose actions of
the trial court actually sought by the party in that tribunal.@  Prystash v.
State, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999) (en banc).  Here, Kercho
neither requested nor accepted the State=s stipulation
concerning the warrantless arrest.  Thus, Kercho cannot be said to have invited
error.  Moreover, as previously discussed, the trial court=s conclusion was
not erroneous.  We therefore reject the State=s arguments that
Kercho failed to preserve error, if any, in the trial court=s denial of his
motion to suppress. 

2.       Evidence
of Probable Cause

Kercho argues that his arrest was unlawful because Officer
Bellamy offered no more than his subjective conclusion that Kercho had lost the
normal use of his mental and physical faculties.  Kercho correctly points out
that Bellamy did not testify that Kercho failed the field sobriety tests, or
that the reason Kercho was unable to drive safely was due to intoxication.
Thus, he argues, the testimony presented at the hearing on his motions to
suppress was insufficient to establish probable cause for his arrest, and all
evidence arising from his arrest is inadmissible.

a.       Absence
of Testimony Regarding the Results of Field Sobriety Tests








In support of his argument that the State=s failure to
present evidence of the results of his field sobriety tests requires reversal,
Kercho first relies on Torres, 182 S.W.3d at 902B03.  In Torres,
the arresting officer arrived to investigate a single-vehicle accident after
two sheriff=s deputies were already at the scene.  Id. at
901.  The deputies told the arresting officer that they believed the driver,
who had driven his car 150 feet off the road and into a porch,  was
intoxicated.  Id.  The officer asked the driver how the accident occurred,
and the driver answered that he was unfamiliar with the road and made a wrong
turn.  Id.   Based only on this information, the officer arrested the
driver.  Id.  The court held, AThis one question
and answer is insufficient to show probable cause to believe that appellant was
intoxicated.@  Id. at 903.  In reaching this conclusion, the
court emphasized that the arresting officer Alacked any
personal knowledge about the accident or the circumstances surrounding it.@  Id. 
Moreover, the officer did not testify that he administered any field sobriety
tests, detected the odor of alcoholic beverages on the driver=s breath, or
observed common signs of intoxication.  See id.  He performed no
independent investigation and had no personal knowledge of the facts.  Id. 
Nevertheless, he arrested the driver based solely on the deputies= opinions.  

The present case is readily distinguished from Torres. 
Here, the arresting officer had personal knowledge of the facts and
circumstances surrounding the traffic violation that led to Kercho=s arrest.  Bellamy
personally observed Kercho weaving and driving fifty-one m.p.h. in a
thirty-five m.p.h. zone.  Bellamy also testified that he observed common signs
of intoxication and performed field sobriety tests.  Therefore, his decision to
arrest Kercho was not based on a second-hand opinion, but on his own first-hand
observations and investigation.








Kercho correctly points out that Bellamy was not questioned
regarding the results of the field sobriety tests, and thus, there is no
evidence in the record that Kercho failed the tests.  To support his argument
that this omission is fatal to the State=s case, Kercho
relies on State v. Hopper, 842 S.W.2d 817, 821 (Tex. App.CEl Paso 1992, no
pet.).

In Hopper, the testifying officer stated that he
detained a driver after he witnessed the driver traveling at an unspecified
excessive speed.  Id. at 818.  The officer began field sobriety testing,
but then asked a second officer to perform the tests.  Id. at 818B19.  The second
officer conducted or completed the unspecified sobriety tests, and arrested the
driver for driving while intoxicated.  Id. at 819.  Although the officer
who initially detained the driver testified at the hearing on the motion to
suppress, the published opinion does not indicate that the second officer, who
actually performed the sobriety tests and arrested the driver, testified.  The
court held, AOther than the implied conclusion that [the driver]
failed the tests, there is nothing specific in the record which provides any
basis upon which the trial court could reasonably determine that the officers
had probable cause to effect the arrest . . . .@  Id. at
821.  As in Torres, the testifying officer in Hopper relied on
the opinion of another officer, and presented no evidence Aas to the specific
facts and circumstances which warranted the officers to prudently believe that
[the driver] was intoxicated . . . .@  Id.

Hopper is distinguishable from the present case for the same
reasons that Torres is distinguishable: here, the testifying officer did
not rely on the opinion of another officer  based on facts unknown to the
witness.  To the contrary, Bellamy formed his conclusions based on his personal
observations and investigation.  Whereas the testifying officers in  Hopper and
Torres had personal knowledge only of traffic violations, Bellamy=s observations
included common signs of intoxication.








Thus, the issue presented might be rephrased as: AHas the State
established that an officer has probable cause for a warrantless arrest on the
charge of driving while intoxicated when the arresting officer testifies only
that he (a) observed the driver weaving and driving fifty-one m.p.h. in a
thirty-five m.p.h. zone, (b) noticed the driver=s red eyes,
(c) observed the driver=s slowed movements, (d) noticed the
strong odor of alcoholic beverage on the driver=s breath,
(e) characterized these behaviors as common signs of intoxication, (f)
performed field sobriety tests, and (g) concluded that the driver had decreased
mental and physical capacity and was unable to drive safely?@  Reviewing the
totality of the circumstances under the applicable standard of review, we
conclude the evidence rises above the level of A[a]n unarticulated
>hunch,= a suspicion, or
the good faith of the arresting officer . . . .@  Torres,
182 S.W.3d at 902 (citing McDougald v. State, 547 S.W.2d 40, 42 (Tex.
Crim. App. 1977)).

Although Kercho correctly points out that Bellamy did not
describe the administration or results of the horizontal gaze nystagmus test
given to assess Kercho=s sobriety, Bellamy did testify that he
observed several other common signs of intoxication.  A trained and experienced
police officer=s opinion that a driver is intoxicated is a Areasonable belief@ sufficient to
establish probable cause for arrest when based on his personal observation of
such specific, articulable signs of intoxication.  See, e.g., Cotton v. State,
686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985) (en banc) (collecting cases and
stating that evidence of intoxication may include slurred speech, bloodshot
eyes, the odor of alcohol on the person, unsteady balance, staggered gait, or
the odor of alcohol on the breath); Annis v. State, 578 S.W.2d 406, 407
(Tex. Crim. App. 1979) (holding that the experienced arresting officer=s opinion that a
driver was intoxicated was sufficient to establish intoxication when the opinion
was based on his observation that the vehicle swerved and the driver appeared
disorderly, had red eyes and a swaying gait, his breath smelled of alcohol, and
Ahis speech was >mush-mouthed.=@). 

b.       Absence of Testimony Regarding Causation








Kercho next argues that the State was required to show the
arresting officer related specific, objective, articulable facts that would
warrant a person of reasonable caution in the belief that, more likely than
not, Kercho had lost the normal use of his mental or physical faculties as the
result of intoxication.  He contends that the evidence presented at the hearing
is insufficient because Bellamy did not testify that Kercho=s impairment was
caused by intoxication.  In the absence of testimony regarding causation,
Kercho contends the State failed to establish probable cause for his arrest. 
We disagree. 

Probable cause for a warrantless arrest is determined by
reviewing the Atotality of the circumstances.@  Torres,
182 S.W.3d at 902.  It Arequires an evaluation of probabilities,
and probabilities >are the factual and practical
considerations of everyday life on which reasonable and prudent men, not legal
technicians, act.=@  Wiede v.
State, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (quoting Brinegar v.
United States, 338 U.S. 160, 175, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949)). 
When reviewing a trial court=s ruling that depends on probable cause, Aa >divide-and-conquer= or piecemeal
approach is prohibited.@  Id. at 25 (quoting United
States v. Arvizu, 534 U.S. 266, 274, 122 S. Ct. 744, 151 L. Ed. 2d 740
(2002)).  Moreover, in reviewing the trial court=s ruling, we
afford almost total deference to a trial court=s express or implied
determination of historical facts.  Id.

We conclude the trial court found that Kercho=s intoxication was
the reason for his inability to drive safely.  We further hold that this
implied finding of fact is supported by the inferences reasonably drawn from
the evidence, including Bellamy=s testimony that Kercho demonstrated
several signs of intoxication and was not able to drive safely.  As the sole
finder of fact in determining whether there was probable cause to support
Kercho=s arrest, the
trial court was free to use its Acommon sense and
apply common knowledge, observation, and experience gained in the ordinary
affairs of life when giving effect to the inferences that may reasonably be
drawn from the evidence.@  See Wawrykow v. State, 866 S.W.2d
96, 99 (Tex. App.CBeaumont 1993, no pet.).  As demonstrated
by the wealth of authority affirming convictions for driving while intoxicated
based on lay opinion testimony that the driver was intoxicated, it is common
knowledge that intoxication can be the cause of impaired driving.  See, e.g.,
McCown v. State, 192 S.W.3d 158, 164B65 (Tex. App.CFort Worth 2006,
pet. ref=d). 








          We
overrule Kercho=s first issue.

B.      Supplemental
Motion to Suppress

1.       Preservation
of Error

Before reaching the merits of Kercho=s issues regarding
his supplemental motion to suppress, we must first address the State=s argument that
Kercho failed to preserve error, if any, arising from the trial court=s ruling or
failure to rule on this motion.  Specifically, the State points to the trial
court=s refusal to rule
on the motion, and argues that Kercho failed to preserve error because he did
not object to the trial court=s refusal to rule.  See Tex. R. App. P. 33.1(a)(2)(B).  In
contrast, Kercho argues that the trial court implicitly denied the motion, and
thus, no objection was required.  See Tex.
R. App. P. 33.1(a)(2)(A).  

Our review of the record of the combined hearing on the two
motions to suppress reveals that the trial court initially denied Kercho=s supplemental
motion:

Court: Well, I=m ruling with the State basically
on this one, Mr. Palmie.[3] 
I thought [I] made that clear.  I=m not going to go into those issues, I think those go into
the weight and not admissibility.  If you feel I=m wrong, of course, you can appeal meC

Defense:      I would like to do
that, Judge.

. . .

Court: But anyway,
I=m not going into
all the issues about extrapolation, about the test and so on.  The State can
present that testimony at trial and if the jury finds it convincing, they can,
you know, give whatever weight they feel.

When
the trial court later stated that it had not ruled, Kercho=s defense counsel
pressed the court for a ruling:








Defense:      [B]asically, do I
understand, Your Honor, that you=re denying my Supplemental Motion to Suppress at this time?

Court: No, I think we should hear
from the officers and hear what=s going on.

Defense:      I=m sorry, maybe the Court hasn=t had a chance to look at the
supplemental motion?

Court: I have, I glanced through
it.

Defense:      Then you know that
the Supplemental Motion to Suppress deals exclusively with the breath test and
the breath test results?

Court: Mr. Palmie, let=s get started on something.  Let=s hear from the witnesses from the
State.

Defense:      Well, I=m pressing the Court for a ruling
on that.

Court: I know.  I know that, Mr.
Palmie.

Defense:      Do I understandC

Court: I know when I=m being pressed.  And I=m smiling when I=m saying that.

Defense:      I appreciate that,
Your Honor.  I=ll [sic] smiling when I say it.

Court: Okay.  All right.

Defense:      Do I understand, Your
Honor, that in this motion to suppressCand my understanding from dealing with you previously is
that you carry no motions to suppress with the trial?

Court: Correct.

Defense:      SoC

Court: Unless they ariseCwe didn=t anticipate them, some emergency;
that=s right.

Defense:      And in anticipation
of a motion to suppress suppressing [sic] the breath test, I have filed a
Supplemental Motion to Suppress which deals exclusively with the breath test
results.  So my question to you is, Your Honor, if you=re prepared to deal with that right
now perhaps you could give me just a minute to talk to the State?  We may
obviate the need for any further hearing because if you=re not going to let us address
that, I think we=d like to take that up.          








. . .

Defense:      Where we are, Your
Honor, is that if you=re going to preclude me from
getting into theCyou=re not going to rule on the admissibility of the
breath test results, if you=re going to overrule the supplemental motion, then we will plead this
right now.

Court: I=m not overruling anything, Mr.
Palmie.  I keep telling you that.  I haven=t heard any testimony, I haven=t heard anything.  You don=t seem to want to get into that, I
haven=t ruled on anything.

Defense:      Do I understandC

Court: I=m just telling you that when the
officers come up we are not going to get into the test and so on, we are going
to focus on the issue of reasonable suspicion and the defendant=s statements, if any, on the way to
the station.

. . .

Defense:      If you deny my
Supplemental Motion to SuppressC

Court: Uh-huh.

Defense:      Cthen I=ll plea and I would like to take
that up [on appeal].  If you are not going to rule on that and you=re going to require evidence from
the officers before you ruleCand I assume when the officers conclude their testimony you would rule
on all motions; is that right?

Court: Correct.

Defense:      Okay.  Then I will
sit and listen to the State go through reasonable suspicion for the stop and
probable cause for the arrest; but I will tell you, as I=ve told the State, that the thrust
of my [supplemental] motion and the reason I specifically enumerated the areas
into which I was going and gave them to you and to the State is that I am
focusing on breath test results.

[Evidentiary Hearing conducted on
both motions]








Court: Okay.  All right.  Based on
the evidence and the arguments cited by counsel, Mr. Palmie, I=m going to deny your Motion to
Suppress.  And I=m not going to rule on your
Supplemental Motion to Suppress, I feel those are questions for the jury and
not for the court.  Those go to the weight and not admissibility, it=s [for] the jury to decide those
issues.  They=re not issues for the Court.         

Defense:      Judge, if they=re not issues for the Court, then
you=re denying the Supplemental Motion;
is that right?

Court: I=ve ruled, Mr. Palmie.  If you want
to appeal me, go ahead.

State:           Thank you, Your
Honor.

Court: Okay.

Defense:      Judge, are you
carrying the Supplemental Motion to Suppress that deals with the admissibility
of the breath tests results with the trial?

Court: No.

Defense:      How are you disposing
with [sic] the Supplemental Motion to Suppress?

Court: I=ve already stated that, Mr. Palmie.

[End of Hearing]

On appeal, Kercho contends the trial court implicitly
overruled his supplemental motion, and thus, no further objection was
required.  The State responds that this court would not be justified in
implying a ruling in contravention of the trial court=s explicit refusal
to rule.  See State v. Cullen, 195 S.W.3d 696, 698 (Tex. Crim. App.
2006) (A[C]ourts of
appeals should not be forced to make assumptions (or outright guesses) about a
trial court=s ruling on a motion to suppress evidence.@); compare Tex. R. App. P. 33.1(a)(2)(A)
(providing in pertinent part that, to preserve error for review, the party must
Aeither expressly
or implicitly@ obtain a ruling on the motion) with Tex. R. App. P. 33.1(a)(2)(B)
(requiring that, if the trial court refuses to rule, a party must object to the
refusal in order to preserve error).  








On this record, we conclude the trial court overruled
Kercho=s supplemental
motion to suppress.  First, it is clear that the trial court disposed of the
motion in some fashion.  The trial court stated that the supplemental motion
would not be carried with the trial, and when asked how the court disposed of
the motion, the trial court replied, AI=ve already stated
that . . . .@  But the trial
court=s only statement
that appears to dispose of the motion is its initial statement, AI=m ruling with the
State basically on this one . . . .@  The trial court
also explained its reasons for this ruling: AI feel those are
questions for the jury and not for the court.  Those go to the weight and not
admissibility, it=s [for] the jury to decide those issues.@  Although the
trial court stated that these were its reasons for refusing to rule, the trial
court earlier gave these as the same reasons for overruling the motion.

Moreover, even if we agreed with the State that the trial
court did not rule on the motion, Kercho=s response to any
such refusal was adequate to preserve error.  As the Court of Criminal Appeals
has explained,  

[t]he standards of procedural
default . . . are not to be implemented by splitting hairs
in the appellate courts.  As regards specificity, all a party has to do to
avoid the forfeiture of a complaint on appeal is to let the trial judge know
what he wants, why he thinks himself entitled to it, and to do so clearly
enough for the judge to understand him at a time when the trial court is in a
proper position to do something about it.  Of course, when it seems from
context that a party failed effectively to communicate his desire, then
reviewing courts should not hesitate to hold that appellate complaints arising
from the event have been lost.  But otherwise, they should reach the merits of
those complaints without requiring that the parties read some special script to
make their wishes known.

Lankston
v. State, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) (en banc).  Although
Kercho=s attorney did not
use the word Aobject,@ it is evident
from the record that he complained to the trial court about its purported
refusal to rule.  It is equally evident that all parties timely understood the
nature of Kercho=s complaint.  This was acknowledged by the
prosecutor, who stated, ACan I just say for the record, a part of
[defense counsel=s] complaint was that [the trial court]
wouldn=t address the
motion.@  

Based on the transcript of the hearing, we reject the State=s arguments that
Kercho failed to preserve his challenges to the error, if any, in the trial
court=s ruling on the
supplemental motion to suppress.   








2.       Sufficiency
of Evidence as a Basis for Scientifically Reliable Opinion

On appeal, Kercho contends the trial court erred in denying
his supplemental motion to suppress the breath test results because the State
failed to offer sufficient evidence on which its expert could base a
scientifically reliable opinion concerning retrograde extrapolation.  ARetrograde
extrapolation is the computation back in time of the blood-alcohol levelCthat is, the
estimation of the level at the time of driving based on a test result from some
later time.@  Mata v. State, 46 S.W.3d 902, 908B09 (Tex. Crim.
App. 2001) (en banc).  Kercho argues that his breath test results should be
suppressed because the technician responsible for this particular machine
lacked sufficient information to extrapolate from Kercho=s test results and
determine his blood-alcohol level at a time that he was driving.  In the trial
court, Kercho similarly argued that in the absence of such retrograde
expolation evidence, the breath test results were inadmissible under Texas Rule
of Evidence 702 and Mata.  

But Kercho moved to suppress his breath test results, not
retrograde extrapolation evidence or expert opinion testimony regarding his
likely blood-alcohol level at any time before his breath was actually tested. 
Thus, Mata does not support his argument because it concerns only the
admissibility of expert testimony and does not address the admissibility of
breath test results.  See Mata, 46 S.W.3d at 910 (stating that the Court
did not Aaddress whether
test results showing a defendant=s [blood-alcohol
concentration] at some time after the alleged offense are admissible at trial
in the absence of retrograde extrapolation@); see also
State v. Mechler, 153 S.W.3d 435, 438 (Tex. Crim. App. 2005)
(confirming that Mata addresses the admissibility of expert testimony
rather than breath test results).  








Moreover, retrograde extrapolation evidence is not a
prerequisite to the admission of breath test results.  Stewart v. State,
129 S.W.3d 93, 97 (Tex. Crim. App. 2004) (en banc); Garcia v. State, 112
S.W.3d 839, 849B50 (Tex. App.CHouston [14th
Dist.] 2003, no pet.).  Thus, even if we agreed with Kercho that the State=s expert would
have insufficient information at trial on which to base an expert opinion
regarding Kercho=s likely blood-alcohol level at the time
he was last seen drivingCan issue not properly before usCsuch agreement
would still afford no basis for excluding the breath test results.  We
therefore overrule Kercho=s second issue.[4]

3.       Compliance
with Texas Breath Alcohol Testing Regulations

In his third issue, Kercho contends the trial court erred
in denying his supplemental motion to suppress because his breath test was not
conducted in accordance with governing regulations.  See Reynolds v. State,
204 S.W.3d 386, 391 (Tex. Crim. App. 2006) (holding that, to rule on the
admissibility of the test results, the trial court need only determine whether
the technique was properly applied on the occasion in question).

On appeal, Kercho argues that his breath test was not
conducted in accordance with a regulation in effect at that time, which
required:

the analysis of a reference sample,
prepared by the technical supervisor or a designee of the scientific director,
such as headspace gas from a mixture of water and a known weight of alcohol at
a known temperature, the results of which must agree with the reference sample
predicted value within 0.01g/210L, or such limits as set by the scientific
director.  This reference sample shall be performed in conjunction with subject
analyses . . . .

37 Tex. Admin. Code '19.3(c)(4).[5] 
According to Kercho, the reference sample analyzed by the Intoxilyzer used to
perform his breath test was not maintained at a known constant temperature.








But this argument is contradicted by the record.  Technical
Supervisor Debra Stephens testified that the Intoxilyzer used to perform the
test was operating correctly that day and that it maintains a reference sample
solution at a constant temperature of thirty-four degrees Centigrade, plus or
minus two-tenths of a degree.  Kercho argues that Stephens conceded it was Aopen to
interpretation@ whether the reference sample was maintained at a
constant temperature.  In fact, Stephens testified as follows:

Defense:      And are you telling
the Court that the reference sample used in this case was maintained at a
constant temperature?  AConstant@ by definition means no fluctuation or variance.

Stephens:     I think that=s open to interpretation.

Defense:      Okay.  Can you tell
the Court whether the reference sample was being maintained at a constant
temperature at the time this test was given?

Stephens:     Yes, it was at a
constant temperature.

Defense:      Tell me then why you
felt it necessary to talk about a variance earlier of plus or minus 0.02? [sic]

Stephens:     Because
0.02 [sic] is allowed in the regulations and, therefore, it is
considered to be a constant temperature by the scientific director who wrote
those regulations.

(emphasis
added).  Stephens=s testimony clarified that, under the
regulations, the definition of Aconstant temperature@ does not
necessarily require a complete absence of fluctuation, but includes a variance
of 0.02 degrees.  Stephens then corrected her testimony, and stated that the
temperature may vary by two-tenths of a degree.[6] 
In addition, the officer who performed the test testified that the machine
would fail to operate if the reference sample was not maintained at its
required temperature.  Thus, the trial court=s implied finding
that the reference sample was maintained at a known temperature is supported by
the record.








We overrule Kercho=s third issue.

V.  Conclusion

Having overruled each of Kercho=s three issues, we
affirm the judgment of the trial court.

 

 

 

/s/      Eva M. Guzman

Justice

 

 

 

Judgment rendered and Memorandum
Opinion filed May 31, 2007.

Panel consists of Justices Frost,
Seymore, and Guzman.

Do Not
Publish C Tex. R. App. P. 47.2(b).









[1]  Kercho=s
original appeal was dismissed on the ground that he had signed a standardized
form containing a waiver of the right to appeal.  Kercho v. State, No.
14-01-01176-CR, 2002 WL 15932 (Tex. App.CHouston
[14th Dist.] Jan. 3, 2002) (per curiam) (mem. op., not designated for
publication).  After the decision was issued, the Court of Criminal Appeals
decided Alzarka v. State, 90 S.W.3d 321 (Tex. Crim. App. 2002) (en
banc), reversing the dismissal of an appeal on similar facts.  As a result, the
original Kercho opinion was vacated and the case remanded for
reconsideration in light of Alzarka.  Kercho v. State, No.
0656-02, 2002 WL 32069150 (Tex. Crim. App. Jan. 29, 2002) (per curiam) (not
designated for publication).





[2]  Kercho=s
trial counsel was therefore mistaken when he represented to the trial court
that A[t]here is no evidence before the Court that this is a
warrantless arrest . . . . There is no testimony in
front of the Court at this time that it is a warrantless arrest.@





[3]  Kercho was represented at trial by attorney Ross
Palmie.





[4]  Although Kercho=s
attorney called and examined a witness regarding retrograde extrapolation, the
parties do not contend that the suppression of such evidence was tried by
consent.  Moreover, the trial court repeatedly cautioned Kercho=s attorney that his examination was Awandering all over the map@ but stated that it was faster to allow the
questioning than to permit argument regarding the scope of the hearing.





[5]  Amended, 31 Tex. Reg. 2189.





[6]  See also Gamez v. State, No. 04-02-00087-CR,
2003 WL 145554, at *3 (Tex. App.CSan
Antonio Jan. 22, 2003, no pet.) (mem. op., not designated for publication)
(affirming the admission of breath test results and summarizing similar
testimony that the Intoxilyzer uses a reference sample maintained at thirty-four
degrees Centigrade plus or minus two-tenths of a degree).