

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-11-00481-CR

DWAYNE HARLAN CAMP, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 62,035-E, Honorable Leland Waters, Presiding

December 19, 2013

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

A police officer conducting an inventory of the contents of appellant Dwayne Harlan Camp's vehicle discovered methamphetamine, in an amount less than one gram, in a container inside his backpack. Camp was charged by indictment with possession of the substance.[1] The trial court denied Camp's motion to suppress,

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.102(c) (West 2010) (classifying methamphetamine as a penalty group 1 drug); TEX. HEALTH & SAFETY CODE ANN. § 481.115(a),(b) (West 2010) (providing possession of a penalty group 1 drug weighing less than one gram is a state jail felony).

accepted his plea of guilty, and sentenced him according to the State's punishment recommendation to confinement in a state jail for eighteen months and a fine of $500. Camp preserved the right to appeal the denial of his motion to suppress. Based on the record in this case, we will reverse the judgment of the trial court and remand the case for proceedings consistent with this opinion.

Background

The testimony at the hearing on Camp's motion to suppress came from two Amarillo police officers. One officer testified that while on patrol about noon, he saw a pickup being driven with an expired inspection sticker and no windshield registration decal. The officer pulled behind the pickup and activated his emergency lights. The driver, Camp, did not immediately pull over but continued traveling a block or more before he made a turn and then pulled into a residential driveway. The location was not Camp's residence.

Camp was alone in the pickup. The officer testified Camp was shaking and appeared too nervous for a routine traffic stop. The officer "suspected there was something going on." He placed Camp in handcuffs so "he wouldn't want to fight or run or anything like that." "[S]uspecting [there was] narcotics use going on" the officer obtained permission to search Camp's person. He found nothing of concern. When asked why he did not stop as directed, Camp told the officer he did not want the pickup impounded.

The officer placed Camp in the back seat of his patrol car. The information check revealed that Camp's driver's license was suspended. The officer believed Camp also

had committed the traffic offenses of operating a motor vehicle with an expired inspection sticker, failing to display a windshield registration decal, failing to possess proof of liability insurance, and displaying a "fictitious" license plate on the vehicle.[2] The pickup was registered to Kenneth Jenkins, who was not present. At an unspecified point during the stop, Camp told the officer "he had been using drugs earlier." No evidence elaborates on this statement.

The officer decided to arrest Camp for the traffic violations and impound the pickup. The officer testified that the occupant of the residence where Camp parked gave permission to leave the vehicle in the driveway, but the officer concluded this offer was not acceptable. The bed of the pickup contained Camp's tools which, at his request, were released to the occupant of the residence.

A second officer arrived at the scene. He also testified to Camp's agitated state. The officer inventoried the contents of the pickup's interior. Inside a backpack sitting on the passenger side floorboard, he found an eyeglasses case. Opening the case, the officer found a plastic baggie containing a "crystal-like substance" later determined to contain methamphetamine.

At the conclusion of the hearing, the trial court stated on the record several findings. The court found that the officers had no reasonable alternative but to inventory the pickup, the written inventory policy expressed the department's "acceptance of responsibility" for the contents of a vehicle and the property disposition, the inventorying officer did not abuse his discretion and in this respect did not exercise excessive latitude

_____

[2] During the stop the officer learned the license plate on the pickup was not registered to that vehicle.

or conduct a subterfuge, and any deviation from policy was insignificant. The court concluded Camp's constitutional rights were not violated.

Analysis

In his second issue, Camp asserts the trial court erred by determining that the police properly impounded and inventoried his vehicle. Because we find it dispositive of the appeal, we begin with his challenge to the lawfulness of the inventory of the vehicle's contents.

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). In so doing, we give "almost total deference to [the] trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Fienen v. State,* 390 S.W.3d 328, 335 (Tex. Crim. App. 2012) (quoting *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We view the record evidence and all reasonable inferences therefrom in the light most favorable to the trial court's ruling. *State v. Garcia-Cantu,* 253 S.W.3d 236, 241 (Tex. Crim. App. 2008) (party prevailing in trial court is afforded "strongest legitimate view of the evidence and all reasonable inferences"). We review *de novo* questions of law and mixed questions of law and fact that do not depend on evaluation of credibility and demeanor. *Fienen,* 390 S.W.3d at 335 (citing *Montanez v. State,* 195 S.W.3d 101, 106 (Tex. Crim. App. 2006)). The State shoulders the burden of establishing officers conducted a lawful inventory. *See Gauldin v. State,* 683 S.W.2d 411, 415 (Tex. Crim. App. 1984), *overruled on other grounds by Heitman v. State,* 815

4

S.W.2d 681 (Tex. Crim. App. 1991); *Evers v. State,* 576 S.W.2d 46, 50 & n.5 (Tex. Crim. App. 1978).

The inventory of a lawfully seized vehicle is a settled exception to the Fourth Amendment's warrant requirement. *Colorado v. Bertine,* 479 U.S. 367, 371, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). An inventory must be conducted "according to standardized criteria or established routine." *United States v. Mundy,* 621 F.3d 283, 287 (3d Cir. 2010) (citing *Bertine,* 479 U.S. at 374 n.6); *see Florida v. Wells,* 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990); *South Dakota v. Opperman,* 428 U.S. 364, 372, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (noting decisions finding inventories conducted under standard police procedures to be reasonable).

Requiring that inventories be conducted according to criteria or routine strikes a balance between the State's legitimate interests and the legitimate privacy expectations of the owner. *United States v. Salmon,* 944 F.2d 1106, 1120 (3d Cir. 1991). Standardized criteria or established routine must limit police discretion as to, first, whether to search the vehicle and, second, the scope of an inventory, especially with regard to dealing with closed containers. *Id.* (citing *Bertine,* 479 U.S. at 375-76, 374 & n.6; *United States v. Frank,* 864 F.2d 992, 1002-03, 1003 (3d Cir. 1988) and *Wells,* 110 S.Ct. at 1635; *United States v. Bush,* 647 F.2d 357, 370-71 (3d Cir. 1981)). Consistent with the Fourth Amendment, police may open closed containers as part of the inventory of an automobile, as long as they do so according to standard police procedures and as long as they do not act in bad faith or for the sole purpose of investigation. *See Wells,* 495 U.S. at 4; *Bertine* 479 U.S. at 369 (search of closed backpack found in vehicle). The Court in *Wells* elaborated:

5

> Our view that standardized criteria . . . or established routine . . . must regulate the opening of containers found during inventory searches is based on the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. The policy or practice governing inventory searches should be designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory searches are turned into "a purposeful and general means of discovering evidence of crime[.]"

*Id.* at 4 (citations omitted).

The evidence includes a document, offered into evidence by Camp, apparently from the Amarillo Police Department's (APD) rules and regulations manual, containing the reference "Procedures 2.29; Subject: Impound and release of impounded vehicles." It addresses the circumstances under which vehicles may be impounded and the procedures to be followed.

The document contains a paragraph headed "Inventory," which reads, in its entirety, "Officers are responsible for proper inventory of vehicle contents and disposition of the impound stub." One of the officers, under cross-examination, acknowledged that the written statement contains no guidance with regard to opening closed containers during an inventory.

The evidence in this record regarding the policy applicable to inventory of Camp's vehicle may thus be compared with that in *Richards v. State*, 150 S.W.3d 762 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (en banc). In that case, the appellate court quoted and addressed a Houston police department inventory policy that similarly required officers to inventory towed vehicles and complete the required paperwork. Like the policy in evidence here, the court also noted the written Houston policy did not "specifically provide whether officers were authorized to search locked trunks or closed

6

backpacks." *Id.* at 771.  But the court found evidence of an established routine governing the opening of closed containers in the testimony of the officer who performed the inventory.  That officer "testified that, although there was no written guideline, he was trained to inventory any container he had access to, including a locked trunk if he has the key for it."  *Id.*[3]

Although the findings dictated into the record by the trial court do not express the conclusion that the inventory performed by the officers here, including the opening of Camp's backpack and the eyeglass case within it, was conducted in accord with the APD's standard procedure or established routine, its conclusion to that effect is implied in its denial of Camp's motion to suppress.  Because the written APD policy in evidence here, like the written Houston policy in *Richards*, does not specifically address the opening of closed containers, we look for other evidence of standardized criteria or established routine governing officers' conduct of inventories.  Even attributing to this record the "strongest legitimate view of the evidence and all reasonable inferences" in support of the trial court's ruling, *State v. Garcia-Cantu,* 253 S.W.3d 236, 241 (Tex. Crim. App. 2008), we must conclude the record is lacking evidence that the Amarillo police department has a standard policy, criteria or established routine governing the opening of closed containers and that such a standard policy was followed by the officers in this case.

---

[3] *See United States v. Como,* 53 F.3d 87, 92 (5th Cir. 1995) (upholding inventory search in the absence of a written policy and explaining "testimony regarding reliance on standardized procedures is sufficient"); *United States v. Thompson,* 29 F.3d 62, 65 (2d Cir. 1994) ("The existence of . . . a valid [inventory search] procedure may be proven by reference to either written rules and regulations or testimony regarding standard practices") (citations omitted).

In testimony both uncertain and contradictory, the officers struggled to express that the APD has a policy or criteria governing the opening of closed containers like Camp's backpack and eyeglass container, and that they followed the policy. Based on some of their statements, it might be argued the officers' testimony reflects a standardized APD procedure of opening all closed containers during an inventory. But the officers never said as much.

In its brief, the State characterizes the testimony as showing that "police procedure included looking into containers as appropriate." If that is the only criteria, officers in the field are placed in the position of deciding which containers are appropriately opened and which are not.[4] *Wells* does not forbid policies or procedures that grant officers some discretion.[5] But it forbids such "uncanalized discretion." *Wells,* 495 U.S. at 4.

To demonstrate that the officers' search of the interior of Camp's backpack and eyeglass container, without a warrant, was justified as part of a lawful inventory of the vehicle's contents, the State was required to show that their action was required by a standardized criteria or established police routine. *Wells,* 495 U.S. at 4; *Gauldin,* 683 S.W.2d at 415. The Amarillo Police Department may have had in place a policy or standardized criteria to guide an officer's decision whether to open such a closed

---

[4] *Cf. Bertine,* 479 U.S. at 375 (affirming principle that "a single familiar standard is essential to guide police officers . . . .") (citations omitted).

[5] The Court in *Wells* quoted its statement from *Bertine,* 479 U.S. at 375: "Nothing in [*South Dakota v. Opperman,* 428 U.S. 364 (1976), or *Illinois v. Lafayette,* 462 U.S. 640 (1983),] prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Wells,* 495 U.S. at 3-4.

container when inventorying a vehicle's contents, but this record does not tell us so.[6] We disagree with the trial court's application of the law to the facts depicted in this record, and so conclude the court abused its discretion by failing to suppress the contraband discovered inside the eyeglass container. We sustain Camp's second issue to the extent it challenges the lawfulness of the inventory of the vehicle he operated. Review of the remainder of Camp's second issue as well and his other issues is unnecessary for final disposition of this appeal. Tex. R. App. P. 47.1.

## Conclusion

The judgment of the trial court is reversed and the case remanded for proceedings consistent with this opinion.

James T. Campbell
Justice

Do not publish.

---

[6] While also involving an inventory of a vehicle, our recent decision in *Johnson v. State,* No. 07-11-00186-CR, 2013 Tex. App. Lexis 6268 (Tex. App.—Amarillo May 21, 2013, no pet.) (mem. op, not designated for publication), is distinguishable. In *Johnson,* an officer inventorying the defendant's vehicle opened the front seat console compartment and saw baggies containing cocaine. *Id.* at *2. The defendant moved to suppress the substance. No written police department inventory procedure was offered in evidence at the suppression hearing, but an officer testified that his inventory, including his action of opening the console compartment, was conducted according to department regulations. *Id.* at *8-9.