**Marcus Dewayne MAYBERRY, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 05–91–00656–CR.**

Court of Appeals of Texas, Dallas.

March 31, 1992.

Gary A. Udashen, Dallas, for appellant.

Michael J. Sandlin, Dallas, for appellee.

Before THOMAS, MALONEY, and KAPLAN, JJ.

## OPINION

KAPLAN, Justice.

A jury convicted Marcus Dewayne Mayberry of aggravated robbery. The trial court assessed punishment, enhanced by a prior felony conviction, at sixty years' confinement. In three points of error, appellant complains of an improper jury argument and an illegal inventory search of his vehicle. We sustain the first point of error concerning improper jury argument. The remaining points are overruled. We reverse the trial court's judgment and remand this cause for a new trial.

## BACKGROUND FACTS

Alan Jackson, a bus driver for the Dallas Area Rapid Transit Company, testified that he was robbed at gunpoint on February 20, 1991. Jackson stated that he opened the door after he heard a knock on the side of his bus. A man pointed a gun in his face and demanded his money. Jackson gave the man $45. The man left on foot, and Jackson called the police. Jackson later identified appellant as his assailant.

Thomas Miller testified that he saw a DART bus parked at the end of his street. He also saw appellant walking away from the bus. Miller grew up with appellant, and they were neighbors. The police told Miller about the robbery and described the suspect. Miller told the police that appellant matched the physical description of the gunman. He said that appellant was wearing a toboggan-type cap and a blue jacket. Miller also told the police that appellant drove a late-model yellow Pontiac Firebird.

Dallas Police Officer Steven Umlor testified that he located a yellow Pontiac Firebird parked on a nearby street. He called for backup units and a police helicopter. Officer Umlor and his partner followed the car as it proceeded down the street. Appellant drove into a private driveway. The officers arrested appellant and impounded the car. A firearm, toboggan knit cap, and

green hooded jacket were recovered from the trunk of the car during an inventory search.

## JURY ARGUMENT

In his first point of error, appellant complains of the prosecutor's final argument at the guilt-innocence phase of the trial. Appellant argues that the prosecutor improperly commented on his nontestimonial courtroom demeanor. Appellant did not testify at the guilt-innocence stage of the trial.

The prosecutor made the following argument referring to appellant's demeanor during the testimony of two witnesses:

[PROSECUTOR]: One key thing here, you know how he is ducking his head now and his eyes to the floor? Well, what about when Mr. Jackson [the complainant] is up here testifying and what about this life-long neighbor of his when he is up here testifying? Was he looking down like that? No. He was glaring them in the face, just glaring them. *Glare of an innocent man? I don't think so, folks. I don't think so.*

[DEFENSE COUNSEL]: Judge, if he is implying that there is any indication of guilt or innocence as the result of the way the man looks here in court, that's also highly improper, and we object to it.

THE COURT: Overruled.

(Emphasis added).

### A. Improper Jury Argument

■ The permissible areas of jury argument are well established. Proper subjects of jury argument include (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) answers to arguments of opposing counsel, and (4) pleas for law enforcement. *Alejandro v. State,* 493 S.W.2d 230, 231–32 (Tex.Crim.App. 1973). The prosecutor's jury argument was unquestionably improper because it did not fall within any of these approved areas.

■ The prosecutor's comments were not a summation of the evidence. A defendant's nontestimonial demeanor does not constitute evidence that may be referenced by the prosecutor. Allowing the prosecutor to comment on nontestimonial courtroom demeanor improperly places a defendant's demeanor before the jury through unsworn argument. *Good v. State,* 723 S.W.2d 734, 736 (Tex.Crim.App.1986).

■ The prosecutor's comments were not reasonable deductions from the evidence. Because a defendant's nontestimonial demeanor is not evidence, it provides no basis for reasonable deductions from the evidence. Courtroom demeanor is simply irrelevant to the issue of guilt. *Id.* at 737. The prosecutor's suggestion that appellant's demeanor indicated guilt was clearly improper.

■ The prosecutor's statements were not invited by, or responsive to, any argument of defense counsel. The invited argument rule allows the prosecution to go outside the record to respond to unsubstantiated arguments made by defense counsel. *Johnson v. State,* 611 S.W.2d 649, 650 (Tex. Crim.App. [Panel Op.] 1981). Thus, if defense counsel had argued in some manner that appellant's nontestimonial demeanor supported a judgment of acquittal, the prosecutor's comments would have been proper. However, this was not the case. No such argument was made by defense counsel. The prosecutor's statements cannot be justified as invited argument.

The State does not contend that its argument was a plea for law enforcement. *See Good,* 723 S.W.2d at 738.

The prosecutor's comments were not within any of the four areas of acceptable jury argument and, thus, were improper. The trial court erred in overruling appellant's objection. *See id.*

### B. Harm Analysis

■ We must reverse the trial court's judgment unless we determine beyond a reasonable doubt that the improper jury argument made no contribution to conviction or punishment. TEX.R.APP.P. 81(b)(2); *Orona v. State,* 791 S.W.2d 125, 130 (Tex. Crim.App.1990). We do not focus upon the propriety of the outcome, but upon the

integrity of the process leading to the conviction. *Id.* at 130, citing *Harris v. State*, 790 S.W.2d 568, 587 (Tex.Crim.App.1989). The relevant factors include (1) the source of the error, (2) the nature of the error, (3) whether or to what extent it was emphasized by the State, (4) its probable collateral implications, (5) the weight a juror would probably place upon the error, and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. *Orona*, 791 S.W.2d at 130. We isolate the error and all of its effects using the factors listed above and any other pertinent considerations. We then determine whether a rational trier of fact might have reached a different result in the absence of the error and its effects. *Harris*, 790 S.W.2d at 588.

The source of the error in this case was the prosecutor's improper argument about appellant's nontestimonial demeanor as an indication of guilt. The nature of the error is the State's attempt to bolster its case by using unsworn and improper interpretations of appellant's demeanor. The prosecutor's comments were made at the conclusion of the arguments and were among the last words the jury heard. The prosecutor specifically urged his subjective interpretation of appellant's demeanor to support a finding of guilt. We cannot rule out the possibility that the jury adopted this improper interpretation.[1] Moreover, the trial court overruled appellant's objection, thus putting the "stamp of judicial approval" on the improper argument. *See Good*, 723 S.W.2d at 738. This action magnified the possibility of harm. Finally, we note that the Court of Criminal Appeals has expressed continuing concern about the "alarming number of improper [jury] arguments." *Id.* at 735 & n. 1; *See also Everett v. State*, 707 S.W.2d 638, 641 (Tex.Crim. App.1986); *Lomas v. State*, 707 S.W.2d 566, 569 (Tex.Crim.App.1986). In fact, the court has condemned comments similar to those made by the prosecutor in this case. *Good*, 723 S.W.2d at 738. In our view, the

relevant considerations weigh heavily in favor of finding harmful error. We conclude that the prejudicial effects of the prosecutor's improper comments may well have been considerable. The interjection of these irrelevant and harmful matters damaged the integrity of the process. We cannot confidently declare that the prosecutor's argument made no contribution to conviction or punishment. Accordingly, we determine that the prosecutor's improper jury argument constituted reversible error. *See Orona*, 791 S.W.2d at 130; *Good*, 723 S.W.2d at 738. We sustain the first point of error.

### INVENTORY SEARCH

In his second and third points of error, appellant contends that the inventory search of his car was illegal under the Fourth Amendment of the United States Constitution and article 1, section 9 of the Texas Constitution. Specifically, appellant argues that (1) the State failed to prove that there was no alternative to the impoundment of his vehicle, (2) the search was not a true inventory search, and (3) there was insufficient proof that the officers followed established police procedures.

#### A. Reasonable Alternatives to Impoundment

##### 1. Applicable Law

An inventory search is permissible under the federal and state constitutions if conducted pursuant to a lawful impoundment. *South Dakota v. Opperman*, 428 U.S. 364, 375–76, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000 (1976); *Benavides v. State*, 600 S.W.2d 809, 810 (Tex.Crim.App. [Panel Op.] 1980). Texas courts have consistently held that impoundment is lawful only when no other reasonable alternative is available to ensure the protection of the vehicle. When impoundment follows custodial arrest, the courts have considered several factors in determining the reasonableness of the impoundment: (1) the availability of

---

**1.** In this regard, we note the obvious possibility that an innocent defendant might well be inclined to glare at any witness who gave false testimony harmful to the defendant. The pertinent point here is that the prosecutor's comments involved subjective interpretation based on irrelevant matters that were not part of the evidence presented.

someone at the scene of the arrest to whom the police could have given possession of the vehicle, *Delgado v. State,* 718 S.W.2d 718, 721 (Tex.Crim.App.1986); (2) whether the vehicle was impeding the flow of traffic or was a danger to public safety, *Smith v. State,* 759 S.W.2d 163, 167 (Tex.App.— Houston [14th Dist.] 1988, pet. ref'd); (3) whether the vehicle was locked, *Benavides,* 600 S.W.2d at 812; (4) whether the detention of the arrestee would likely be of such duration to require the police to take protective measures, *Fenton v. State,* 785 S.W.2d 443, 445 (Tex.App.—Austin 1990, no pet.); (5) whether there was some reasonable connection between the arrest and the vehicle, *Benavides,* 600 S.W.2d at 812; and (6) whether the vehicle was used in the commission of a crime, *Gauldin v. State,* 683 S.W.2d 411, 415 (Tex.Crim.App.1984). The State has the burden to prove lawful impoundment. *Delgado,* 718 S.W.2d at 721.

■ Texas courts are not bound by federal court precedent when analyzing and interpreting article 1, section 9 of the Texas Constitution. *Heitman v. State,* 815 S.W.2d 681, 690 (Tex.Crim.App.1991). The Court of Criminal Appeals has implicitly recognized that the Texas Constitution affords greater individual protections to its citizens in search and seizure cases than the Fourth Amendment to the United States Constitution. *Id.; see also Gords v. State,* 824 S.W.2d 785, 787 (Tex.App.—Dallas, 1992, no pet. h).

### 2. Application of Law to the Facts

■ The record shows that the police received information indicating that appellant was a robbery suspect and describing his vehicle. Several officers spotted appellant driving the car. They followed the vehicle as it pulled into a driveway. The officers arrested appellant after he exited the car. Dallas Police Officer Michael Murphy called a wrecker to tow the vehicle because it was parked in a private driveway and no one was available to take possession of the car. There was no evidence of who occupied the residence or whether appellant would be permitted to leave the car in the driveway.

Officer Murphy conducted an inventory search of the interior and trunk. He recovered a brown toboggan cap, a green hooded sweater, and a nine millimeter pistol. Officer Murphy did not write out an inventory, but the items connected to the crime were taken and documented by officers from the physical evidence section. The officers found no other items of value in the car. Officer Murphy testified that his actions were taken pursuant to police department policy.

We determine that the State sufficiently established a lack of reasonable alternatives to justify impoundment of the car. The police need not independently investigate possible alternatives to impoundment absent some objectively demonstrable evidence that alternatives did, in fact, exist. It was not incumbent upon the officers to locate the occupant of the house to determine whether appellant's car could remain in the driveway. The State showed that appellant was under arrest, that he was alone, that and no one was readily available to take care of the car. Under these circumstances, the State met its burden of proof.

Appellant relies on *Gords v. State* to support his argument that the impoundment of his vehicle was improper. In *Gords,* we held that the impoundment of the defendant's car was unreasonable because "there were other people at the arrest site to whom the car presumably could have been given." At 788. In the instant case, no one else was present when the officers arrested appellant. The record does not affirmatively show that any other reasonable alternative existed. *Gords* is distinguishable on its facts.

We also can distinguish two other cases relied on by appellant. *Fenton v. State,* 785 S.W.2d 443 (Tex.App.—Austin 1990, no pet.); *Smith v. State,* 759 S.W.2d 163 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd). These cases involve the impoundment of vehicles in parking lots. This case involves a car parked in a private driveway. The inconvenience to a parking lot owner

from one parked car is relatively minor compared to the potential inconvenience resulting from a car parked in a residential driveway.[2] The rationale employed in *Fenton* and *Smith* is simply inapposite.

### B. True Inventory Search

 Appellant also argues that the search was not shown to be a true inventory search. Specifically, appellant contends that there is no evidence that the police actually engaged in a caretaking function. He notes the lack of a written inventory of the contents of the car. However, there was testimony that no items of value were found other than the items taken and documented by the physical evidence section. Officer Murphy explained that had any valuable items been found, he would have listed them in a separate log. We cannot agree that this evidence is insufficient to show a valid inventory search as opposed to a search for evidence. *Cf. Gauldin*, 683 S.W.2d at 415 (no evidence to establish that inventory had been completed or conducted pursuant to standard police procedures).

### C. Police Department Policy

Appellant next argues that there was insufficient evidence that the officers conducted an inventory search pursuant to established police department policy. He argues that there is no evidence concerning the substance or validity of the inventory search policy. Officer Murphy testified that he called for a wrecker to remove appellant's car from the driveway because "the defendant was under arrest and there wasn't anybody else to ... leave the car with." This was done in accordance with police department policy. Officer Murphy's testimony is sufficient to show that an inventory search policy existed and that the policy was followed. *See Moberg v. State*, 810 S.W.2d 190, 195 (Tex.Crim.App. 1991). If appellant wanted to inquire about the substance of this policy and raise specific questions regarding its validity, he

was free to do so. In the absence of any evidence to the contrary, we conclude that this testimony was sufficient to establish that the officers followed established departmental policy.[3] We overrule the second and third points of error.

We reverse the judgment of the trial court and remand this cause for further proceedings consistent with this opinion. *See* TEX.R.APP.P. 81.

---

**2.** The record does not show the size of the driveway or whether it was completely blocked by appellant's car.

**3.** Not all inventory searches conducted pursuant to police department policies are reasonable. We adhere to the principle that constitutional protections cannot be abrogated by police procedures. *See Gords*, at 788.