ACCEPTED
12-15-00055-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
9/18/2015 10:44:46 AM
Pam Estes
CLERK

CAUSE NO. 12-15-00055-CR

IN THE

THE 12th DISTRICT COURT OF APPEALS

FOR THE

STATE OF TEXAS

RECEIVED IN
12th COURT OF APPEALS
TYLER, TEXAS
9/18/2015 10:44:46 AM
PAM ESTES
Clerk

FILED

9/18/2015

Twelfth Court of Appeals
Pam Estes
Clerk

JORGE ZEPEDA,

APPELLANT

V.

THE STATE OF TEXAS,

APPELLEE

## STATE'S REPLY TO APPELLANT'S BRIEF

D. MATT BINGHAM
Criminal District Attorney
Smith County, Texas

MICHAEL J. WEST
Assistant Crimina1 District Attorney
State Bar I.D. No. 21203300
Smith County Courthouse
100 N. Broadway
Tyler, Texas 75702
ph:  (903) 590-1720
fax: (903) 590-1719
mwest@smith-county.com

**ORAL ARGUMENT NOT REQUESTED**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

REPLY TO APPELLANT'S POINTS OF ERROR . . . . . . . . . . . . . . . . . . . . . . . . 2

**COUNTERPOINT ONE: The Trial Court correctly overruled
Appellant's motion to suppress where the record shows that the
officer involved fully followed the vehicle impound and inventory
policies of the Tyler Police Department** . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# INDEX OF AUTHORITIES

**STATUTE/RULES**                                           **PAGE**

**TEX. TRANSP. CODE (Vernon 2014)**

§ 545.104 (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**TEX. R. EVID.**

Rule 104 (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**FEDERAL CASES**                                      **PAGE**

*Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738,
93 L.Ed.2d 739 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Florida v. Wells*, 495 U.S. 1, 110 S.Ct. 1632,
109 L.Ed. 2d 1 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**STATE CASES**                                          **PAGE**

*Benavides v. State*, 600 S.W.2d 809
(Tex.Crim.App. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Brimage v. State*, 918 S.W.2d 466
(Tex.Crim.App. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Brown v. State*, 6 S.W.3d 571
(Tex.App. - Tyler 1999, *pet. ref'd*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Delgado v. State*, 718 S.W.2d 718
(Tex.Crim.App. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*DuBose v. State*, 915 S.W.2d 493
(Tex.Crim.App. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**STATE CASES (CONT)**                                                   **PAGE**

*Garza v. State*, 137 S.W.3d 878
(Tex.App. - Houston [1st Dist.] 2004, *pet. ref'd*) . . . . . . . . . . . . . . . . . . . . .   4, 14

*Greer v. State*, 436 S.W.3d 1
(Tex.App. - Waco 2014, *no pet.*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14, 15

*Guzman v. State*, 955 S.W.2d 85
(Tex.Crim.App. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   passim

*Mayberry v. State,* 830 S.W.2d 176
(Tex.App. - Dallas 1992, *pet. ref'd*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13, 15

*McVickers v. State*, 874 S.W.2d 662
(Tex.Crim.App. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

*Moberg v. State*, 810 S.W.2d 190
(Tex.Crim.App. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5*,* 13

*Moulden v. State*, 576 S.W.2d 817
(Tex.Crim.App. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

*Moskey v. State*, 333 S.W.3d 696
(Tex.App. - Houston [1st Dist.] 2010, *no pet.*) . . . . . . . . . . . . . . . . . . . . . .   3

*Oles v. State*, 993 S.W.2d 103
(Tex.Crim.App. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

*State v. Carter*, 915 S.W.2d 501
(Tex.Crim.App. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6, 19

*Richards v. State*, 150 S.W.3d 762
(Tex.App. - Houston [14th Dist.] 2004, *pet. ref'd*) . . . . . . . . . . . . . . . . . . .   4

*Rippy v. State*, 53 S.W.2d 619
(Tex.Crim.App. 1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

**STATE CASES (CONT)**                                                     **PAGE**

*Roberts v. State*, 444 S.W.3d 770
(Tex. App. - Fort Worth 2014, *pet. ref'd*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*State v. Mercado*, 972 S.W.2d 75
(Tex.Crim.App. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Stephen v. State*, 677 S.W.2d 42
(Tex.Crim.App. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Trujillo v. State*, 952 S.W.2d 879
(Tex.App. - Dallas 1997, *no pet.*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Uballe v. State*, 439 S.W.3d 380
(Tex. App. - Amarillo 2014, *pet. ref'd*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Willis v. State*, 192 S.W.2d 585
(Tex.App. - Tyler 2006, *pet. ref'd*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Villarreal v. State*, 935 S.W.2d 134
(Tex.Crim.App. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

CAUSE NO. 12-15-00055-CR

IN THE

THE 12th DISTRICT COURT OF APPEALS

FOR THE

STATE OF TEXAS

JORGE ZEPEDA,

APPELLANT

V.

THE STATE OF TEXAS,

APPELLEE

**STATE'S REPLY TO APPELLANT'S BRIEF**

**TO THE HONORABLE COURT OF APPEALS**:

Comes now the State of Texas, through the undersigned Assistant Criminal District Attorney, and respectfully urges this Court to overrule Appellant's alleged errors and affirm the judgment of the trial court in the above-numbered cause.

**STATEMENT OF THE CASE**

Appellant, Jorge Zepeda, was charged by information in Cause No. 002-82159-14, in the County Court at Law #2 of Smith County, Texas, with the offense of

1

Possession of a Marijuana. On February 11, 2015, the parties met in court, Appellant with counsel, and after being fully admonished according to the law, Appellant entered a negotiated plea of "Guilty" to the offense alleged by the information. (RR 2: 5). After hearing evidence, the Court imposed the agreed sentence sentence of two years deferred adjudication probation and a $100 fine. (RR 2: 7).

Appellant gave timely notice of appeal and a brief has been filed with the Court. The State's response brief will be timely filed if the Court grants the attached motion for extension.

## STATEMENT OF FACTS

Appellant has stated the essential nature of the evidence presented at the hearing on his motion to suppress. In the interest of judicial economy any other facts not mentioned herein that may be relevant to disposition of Appellant's point of error will be discussed in the State's arguments in response to that point.

### REPLY TO APPELLANT'S POINTS OF ERROR AND SUMMARY OF ARGUMENT

**COUNTERPOINT ONE: The Trial Court correctly overruled Appellant's motion to suppress where the record shows that the officer involved fully followed the vehicle impound and inventory policies of the Tyler Police Department.**

**A.    Summary of Argument**

Police discovered two baggies of marijuana in Appellant's vehicle during an inventory search after impounding the vehicle. (RR 2: 5-6). Appellant argues that the

trial court incorrectly denied his motion to suppress evidence where the officer involved failed to fully follow the allegedly inconsistent vehicle impound policy of the Tyler Police Department (hereinafter "TPD") after stopping Appellant for a traffic violation and discovering that he was an excluded driver on the vehicle's insurance policy. (RR 1: 8-11). However, the record shows that the officer fully complied with the mandatory and discretionary portions of the TDP policies.

## B.     Vehicle Inventory is an Exception to the Warrant Requirement

Valid vehicle inventory searches are an exception to the Fourth Amendment's warrant requirement. *Colorado v. Bertine*, 479 U.S. 367, 371, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987). Law enforcement officials may make a warrantless inventory search of a lawfully impounded vehicle, provided that the inventory is conducted in good faith and in accordance with standardized criteria or an established routine. *Id*. at 371-74; *see also Trujillo v. State*, 952 S.W.2d 879, 882 (Tex.App. - Dallas 1997, *no pet*.) (inventory search is reasonable under Fourth Amendment so long as it is performed in accordance with standard police procedures and not undertaken in bad faith or for sole purpose of investigation); *Moskey v. State*, 333 S.W.3d 696, 700 (Tex.App. - Houston [1ˢᵗ Dist.] 2010, *no pet*.).

Inventory searches "serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen or vandalized property,

and to guard the police from danger." *Bertine*, 479 U.S. at 372; *see also Delgado v. State*, 718 S.W.2d 718, 721 (Tex.Crim.App. 1986). The inventory search must be designed to produce an inventory of the vehicle's contents and must not be a "ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed. 2d 1 (1990); *see also Richards v. State*, 150 S.W.3d 762, 771 (Tex.App. - Houston [14th Dist.] 2004, *pet. ref'd*). "The individual police officer must not be allowed so much latitude that inventory searches are turned into 'a purposeful and general means of discovering evidence of crime.'" *Uballe v. State*, 439 S.W.3d 380, 384 (Tex. App.—Amarillo 2014, *pet. ref'd*) *quoting Wells*, 495 U.S. at 4.

The law further provides that the State bears the burden of proving the impounding of the vehicle and the subsequent inventory search are lawful. *Delgado*, 718 S.W.2d at 721; *see also Benavides v. State*, 600 S.W.2d 809, 810 (Tex.Crim.App. 1980) (subsequent inventory search is proper when the vehicle's impoundment is proper). A vehicle may be validly impounded and inventoried when the driver is removed from the automobile and placed under custodial arrest, and no other alternatives are available to ensure the protection of the driver's property. *Delgado*, 718 S.W.2d at 721; *see also Garza v. State*, 137 S.W.3d 878, 882 (Tex.App. - Houston [1st Dist.] 2004, *pet. ref'd*).

4

The subsequent inventory search is proper if the impounding agency had an inventory policy and the policy was followed. *Moberg v. State*, 810 S.W.2d 190, 195 (Tex.Crim.App. 1991); *Roberts v. State*, 444 S.W.3d 770, 778 (Tex. App.—Fort Worth 2014, *pet. ref'd*). To be lawful, an inventory search must not deviate from the impounding agency's policy. *Moberg*, 810 S.W.2d at 195; *Roberts*, 444 S.W.3d at 778.

## C.     The Standard of Review

A trial court's denial of a motion to suppress is generally reviewed for abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App. 1999); *Willis v. State*, 192 S.W.2d 585, 590 (Tex.App. - Tyler 2006, *pet. ref'd*), *citing Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996).

In reviewing a trial court's ruling on a motion to suppress, appellate courts must give great deference to the trial court's findings of historical fact as long as the record supports the findings. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). This Court should afford the same amount of deference to the trial court's rulings on "mixed questions of law and fact" if the resolution of those ultimate questions turns on an evaluation of witness credibility and demeanor. *Id*. Appellate courts must view the record in the light most favorable to the trial court's ruling and sustain the trial court's ruling if it is reasonably correct on any theory of law

5

applicable to the case. *Id*. The Court of Criminal Appeals has decided that it is improper for an appellate court to weigh the factual sufficiency of the evidence elicited at the suppression hearing because the trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses, as well as the weight to be given their testimony. *DuBose v. State*, 915 S.W.2d 493, 496 (Tex.Crim.App. 1996).

Additionally, the trial judge is also the initial arbiter of the legal significance of those facts. *Id*.; TEX. R. EVID. 104 (a). On appeal, the Court should limit its review of the trial court's rulings, both as to the facts and the legal significance of those facts, to a determination of whether the trial court has abused its discretion. *Id*. The Court of Criminal Appeals has specifically instructed appellate courts to give deference to the trial court's ruling with regard to a motion to suppress. *State v. Carter*, 915 S.W.2d 501, 504 (Tex.Crim.App. 1996). Even if this Court would have reached a different result on the issue of suppression, as long as the trial court's rulings are at least within the "zone of reasonable disagreement," the Court should not intercede. *Id*. at 496-97. The Fourth Amendment and the Texas Constitution forbids only unreasonable searches and seizures. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *Brimage v. State*, 918 S.W.2d 466, 500 (Tex.Crim.App. 1996).

**D.    Application of the Law to the Facts.**

Appellant complains that the trial court abused its discretion in denying his motion to suppress. First, because the officer involved did not fully follow TPD impoundment policy. (Appellant's brief at 23-29). Secondly, because that policy itself is not reasonable where it is "inconsistent as to what actions are required in the decision-making process" where "some portions of the policy indicate that vehicles 'shall' be towed while other portions say that there are mitigating circumstances when towing should not occur." *Id*. at 15.

The State called a single witness to testify at the motion to suppress hearing. Tyler Police Officer Charles Boyce testified that he pulled Appellant over for failing to "signal the required distance." (RR 1: 8). *See* TEX. TRANSP. CODE § 545.104 (b) (Vernon 2014). Prior to the start of testimony, Appellant specifically told the trial court that he was "not contesting the reason for the traffic stop." (RR 1: 5). The law provides that an officer may lawfully stop and detain a person for a traffic violation. *McVickers v. State*, 874 S.W.2d 662, 664 (Tex.Crim.App. 1993).

After stopping Appellant, the officer testified that he could smell the "aroma of marijuana" although he did not document that in his report. (RR 1: 8). When asked for proof of insurance on the vehicle he was operating, Appellant produced an insurance card which indicated on its face that he was an "excluded driver" on the

7

insurance policy. (RR 1: 8-9). This raised "red flags" for the officer and he requested through dispatch a search of Appellant's driving history. (RR 1: 9). He was alerted by dispatch that Appellant had prior convictions for "DWLI" (Driving Without a License) and "FMFR" (Failure to Maintain Financial Responsibility). *Id*. The conviction for "FMFR" was due to operating a vehicle without it being insured. *Id*.

As a result of this driving history, Officer Boyce told the Court that he decided that "I was going to tow the vehicle per our policy." (RR 1: 10). According to the "Tyler Police Department policy for impoundment" subsection D:

> **D**. If the driver's license check return indicates that the driver does not possess a driver's license or the license is suspended for not having insurance and the driver is unable to show proof of financial responsibility on the vehicle being operated, the officer **shall** impound the vehicle. No prior conviction for failing to maintain financial responsibility is necessary when the driver does not possess a driver's license. prior to impounding a vehicle under this policy, the officer shall comply with the same requirements as listed in requirements in subsections B through F as listed under "Accidents" in the policy. (emphasis supplied).

(RR 1: 10; *see also* State's Exhibit 1, p.1).

According to Officer Boyce, an insurance card which specifically lists a person as an "excluded driver" means that "there is no insurance on the vehicle when they are operating the vehicle." (RR 1: 11). It was also his believe that if he let Appellant to continue to drive the vehicle and an accident occurred, "[t]hey could come back

8

and sue the department plus sue me." (RR 1: 11). Officer Boyce further testified that in his opinion he was mandated by departmental policy to tow Appellant's vehicle under subsection C as well which provides:

> **C.** If the officer, either through a driver's license check or through personal contacts, determines that the driver has been previously convicted for operating a motor vehicle with no financial responsibility, the officer **shall** impound the vehicle. Before the officer impounds a vehicle under this policy, the officer shall comply with the requirements in Subsections B - F under "Accidents" in the policy. (emphasis supplied).

(RR 1: State's Exhibit 1, p.1).

It was Officer Boyce's belief that the smell of marijuana in the vehicle gave him probable cause to search it without a warrant. (RR 1: 13). This belief has long been supported by the law. *See, e.g. Moulden v. State*, 576 S.W.2d 817, 818-20 (Tex.Crim.App. 1978) (police officers who stopped motorist and smelled odor of burnt marihuana coming from inside car had probable cause to search car). Nevertheless, the officer decided to impound the vehicle and conduct an inventory instead. (RR 1: 13). He then conducted an inventory of the vehicle pursuant to TPD inventory policy which uncovered the marijuana in an ash tray. (RR 1: 13-14).[1]

A video of the stop and Officer Boyce's actions during it was played for the trial court. (RR 1: 15). On the video, the officer is apparently heard asking Appellant

---

[1] Appellant has not attacked the TPD inventory policy on any grounds.

when was the last time he had smoked marijuana in the vehicle. (RR 1: 15). He asked Appellant several other questions about marijuana to "buy[] time until my back up got there." (RR 1:16).

On cross-examination, it was noted that, although Officer Boyce asked Appellant questions on the video about marijuana, he did not specifically tell Appellant that he smelled marijuana, and he also did not mention the smell in his report. (RR 1: 17). The officer explained that he did not search pursuant to the smell of marijuana because "I couldn't do that without my backup." (RR 1: 17). He also noted that the smell of marijuana "could have been there from days ago." (RR 1: 18, 21). He did not note in his report that he smelled marijuana in Appellant's vehicle because "I dropped the ball." (RR 1: 19).

Officer Boyce stated that he believed that Appellant's father, Mr. Juan Zepeda, was covered by insurance for the vehicle Appellant was driving. (RR 1: 24). He did not contact Appellant's father before towing the vehicle because his father had already allowed Appellant to drive the vehicle. (RR 1: 24). Officer Boyce was of the opinion that there were no mitigating circumstances under the TPD impoundment policy which prohibited him from having the vehicle impounded. (RR 1: 25). He testified that the TPD policy requires that an officer should "consider" mitigating circumstances, but he maintained that he did not feel there were any existing. (RR

1: 26). He did not take Appellant's phone, but left it in the vehicle where it could not be used because he was not letting Appellant get back into the vehicle for reasons of officer safety. (RR 1: 26-27). He would not have let Appellant call to have his father come because "his father had allowed an unlicensed driver to operate a motor vehicle with insurance that has him as an excluded driver." (RR 1: 28).

On re-direct it was finally established that, in addition to being an excluded driver and having a prior FMFR conviction, Appellant's driver's license was also suspended at the time of the stop. (RR 1: 33). This meant that TPD policy mandated towing under both subsections C and D cited above. (RR 1: 33). Officer Boyce stated that he did, as required by TPD policy, consider possible mitigating circumstances but felt that none existed. (RR 1: 34). Had he not discovered the marijuana during the inventory, Officer Boyce would have ensured that Appellant had a way to get home, or would have given him a ride. (RR 1: 34).

After a somewhat redundant round of re-cross and re-direct, the State rested it's case. (RR 1: 40). Appellant then called Mr. Juan Zepeda, his father, to verify that the vehicle was insured and that he owned it. (RR 1: 41). He had thought that Appellant was covered on his policy, but an insurance company representative later informed him that he was not. (RR 1: 42). He also testified that the no-insurance ticket issued to Appellant by Officer Boyce was subsequently dismissed in city court because

11

Appellant was told he didn't have to pay because he was insured. (RR 1: 42). He also testified that he was home and available to pickup the vehicle at the time Appellant was arrested. (RR 1: 42). On cross-examination, Mr. Zepeda agreed that Appellant was an excluded driver on his insurance policy when he was stopped by Officer Boyce. (RR 1: 45). After Mr. Zepeda was excused from the stand, both sides rested and closed. (RR 1: 45).

Regarding mitigating circumstances, the TDP policy on "Impoundment for Failure to Maintain Financial Responsibility" provides that:

> **B**. Impoundment should generally be restricted to those cases where the driver admits to not having financial responsibility or the officer is able to verify that no coverage exists.

(RR 1: State's Exhibit 1, p. 2).

The same policy states on its face that there are seven mitigating circumstances that officers "should" consider before impounding a vehicle: (1) Time of day; (2) Location; (3) Ability of operator to safely leave location; (4) Availability of other units to assist with the safe removal of other occupants; (5) Call demand; (6) Weather conditions; and (7) Lighting. (RR 1: State's Exhibit 1, p. 2).

Of these seven, it is submitted that only the first three have any relation to the offense in this case. Officer Boyce admitted that he considered these. The first two would have been considered in his decision to not allow Mr. Juan Zepeda to be called

12

when the officer decided that "his father had allowed an unlicensed driver to operate a motor vehicle with insurance that has him as an excluded driver." (RR 1: 28). The third circumstance, "Ability of operator to safely leave location" was obviously not a concern once Appellant was arrested after the marijuana was found in his car. Nevertheless, Officer Boyce testified that he otherwise would have made sure that Appellant had a ride home after the vehicle was towed or he would have given him a ride. (RR 1: 34, 36).

## 1.    Officer Boyce followed TPD Policy

Appellant argues that Officer Boyce failed to follow TPD policy essentially by not contacting his father to come and take the vehicle. (Appellant's brief at 24-26). However, nowhere in the TPD policy does it state that the officer must first call a relative to come and get the vehicle before it can be impounded.

More importantly, the same policy mandated for two separate reasons that "the officer shall impound the vehicle." (RR 1: State's Exhibit 1, p.1 subsections C & D). Similarly, Officer Boyce complied with TPD policy by "considering" possible mitigating circumstances. (RR 1: State's Exhibit 1, p. 2 section 07.506 (A)). Officer Boyce's testimony is sufficient to show that an inventory search policy existed and that the policy was followed. *See Mayberry v. State,* 830 S.W.2d 176, 181 (Tex.App. - Dallas 1992, *pet. ref'd*) *citing Moberg*, 810 S.W.2d at 13.

The trial court in denying the motion to suppress did state, "It's clear the officer didn't consider any mitigating circumstances . . ." (RR 1: 52). However, that finding is obviously inconsistent with Officer Boyce's repeated testimony that he did in fact consider the possibility of mitigating circumstances, but he did not believe that any existed. (RR 1: 25, 28, 34, 36-39).

Appellant refers the Court to *Garza v. State*, *supra* wherein the Court set out the State's burden to show a lawful impoundment. That Court held that the State may satisfy its burden on a lawful impoundment by showing: (1) the driver was arrested, (2) no alternatives other than impoundment were available to insure the automobile's protection, (3) the impounding agency had an inventory policy, and (4) the policy was followed. *Id*. at 882. Each of these elements are present in this case and most are found in the testimony of Officer Boyce.

**(i)    The driver was arrested.**

First, the record shows that Appellant, the driver of the vehicle, was arrested for possession of the marijuana that was discovered. (RR 1: 4). The State must concede that Appellant was not arrested until after the inventory search had begun.

However, probable cause existed to arrest Appellant from moment it was discovered that he was driving with a suspended license and without insurance. The undersigned was unable to find any authority ruling on a similar factual situation

14

which indicates whether the timing of the arrest is fatal in an impoundment review. Appellant has provided no authority which stands for the proposition that it is.

More importantly, once Officer Boyce was aware that Appellant's license was suspended and that Appellant was excluded from the insurance policy covering the vehicle, he was obviously unable to legally let Appellant drive the vehicle away from the scene. Appellant was already twice in violation of the law by driving in the first place. And, the officer was specifically aware of the potential civil liability to TPD if Appellant subsequently damaged anyone should he be let go in the vehicle. (RR 1: 11). This very situation appears to have been contemplated by the TPD impoundment policy which makes it mandatory for an officer to impound a vehicle under such circumstances without any mention of an arrest being made. (RR 1: 10; *see also* State's Exhibit 1, p.1 subsection D).

Consequently, where the driver cannot be legally allowed to drive a vehicle due to a discovered lack of a license and/or insurance, the State suggests that the arrest element has in essence been met. There is seemingly little or no substantial difference between whether the driver is under arrest or is otherwise unable to legally operate a motor vehicle - he is equally precluded from driving the vehicle away from where it was stopped under either scenario. And, regardless of the driver's status, both situations can still meet the other required elements of a lawful impoundment.

Thus, it is submitted that the facts of this case are akin to situations where a driver is arrested and no other occupant of the vehicle has a valid license to drive. *See e.g. Stephen v. State*, 677 S.W.2d 42, 43-44 (Tex.Crim.App. 1984) (impoundment proper where driver arrested and passenger was unable to furnish any kind of identification or a driver's license).

**(ii)     No alternatives other than impoundment were available**.

Secondly, while Officer Boyce did not call Appellant's father, neither the TPD impoundment policy, nor the law, require that an officer must make any attempt locate someone to come and pick up the vehicle. *See* (RR 1: State's Exhibit 1); *see also Greer v. State*, 436 S.W.3d 1, 7 (Tex.App. - Waco 2014, *no pet.*) ("We note that peace officers need not independently investigate possible alternatives to impoundment absent some objectively demonstrable evidence that alternatives did, in fact, exist.") *citing Mayberry*, 830 S.W.2d at 180 (as a factor in determining lawful impoundment courts have considered "the availability of someone **at the scene of the arrest** to whom the police could have given possession of the vehicle.") (emphasis supplied).

**(iii)     The impounding agency had an inventory policy**.

Thirdly,  the evidence is undisputed that the Tyler Police Department has an impoundment policy. (RR 1: State's Exhibit 1).

**(iv)    The impoundment policy was followed**.

Finally, the evidence supports that Officer Boyce was fully aware of the TPD impoundment policy and consciously followed it. (RR 1: 10-12, 24-26, 33-34).

Given that the evidence in this case met the required elements, constructively or directly, the trial court's denial of Appellant's motion to suppress, when viewed in "the light most favorable to the trial court's ruling," was not an unreasonable abuse of the court's discretion. *See Guzman*, 955 S.W.2d at 89.

## 2.    The TPD Impoundment Policy is not Inconsistent

Appellant further alleges that the trial court's denial of his motion to suppress was unreasonable and should also be overturned where the TPD impoundment policy is inconsistent or unclear. (Appellant's brief at 15, 23-24). However, while Appellant briefly noted in closing what he thought was an inconsistency in that policy, he did not argue it as a basis for suppression at trial. (RR 1: 5, 49-51). As such, Appellant has waived this complaint. *See State v. Mercado*, 972 S.W.2d 75, 78 (Tex.Crim.App. 1998) (holding points not argued at trial are deemed waived on appeal); *see also Brown v. State*, 6 S.W.3d 571, 582 (Tex.App. - Tyler 1999, *pet. ref'd*) (to preserve error, the complaint on appeal must comport with the objection made at trial).

Alternatively, the TPD policy is not inconsistent or unclear for the mere fact that it allows officers to consider mitigating circumstances in what would otherwise

17

be a situation calling for a mandatory impoundment of a vehicle. The policy must out of necessity cover every potential factual situation that an officer may face while patrolling the streets of Tyler.

The law has long recognized that a police officer must necessarily exercise his discretion in deciding whether to charge a criminal offense. *See Rippy v. State*, 53 S.W.2d 619, 625 (Tex.Crim.App. 1932) ("Peace officers are not lawyers or judges, but men charged with the conservation of the peace, and in most cases the protection of society, and the exercise of their discretion in matters such as are here set forth should not be overturned or revised except possibly in cases clearly evidencing some abuse . . ."). Where an officer may lawfully exercise discretion in charging an individual with an offense, the grant of discretion here in deciding whether to impound a vehicle based upon a consideration of potentially mitigating circumstances is certainly not unreasonable. It is in fact equally necessary to provide the officer with the flexibility that may required to meet whatever unusual circumstances that may arise at a traffic stop.

The trial court found that there existed a conflict in the TPD policy. (RR 1: 52). The State respectfully disagrees. But, in any event, the trial court did not base its denial of Appellant's motion to suppress upon a lack of conflict or clarity in the TPD impoundment policy. The court denied Appellant's motion upon the fact that it felt

the officer complied with the mandatory portion of the TPD policy. (RR 1: 52) ("So based on that basis, the shall part, I am going to deny your motion to suppress."). As argued above, the State believes that there was no abuse of discretion in that ruling.

The Court of Criminal Appeals has specifically instructed appellate courts to give deference to the trial court's ruling with regard to a motion to suppress. *State v. Carter*, 915 S.W.2d at 504. Even if this Court would reach a different result on the issue of suppression, as long as the trial court's rulings are at least within the "zone of reasonable disagreement," the Court should not intercede. *Id*. at 496-97.

For these reasons, there is no merit to Appellant's Point of Error and it should be overruled.

## PRAYER

**WHEREFORE**, for the reasons stated herein, the State of Texas prays that the Court of Appeals overrule Appellant's Points of Error and affirm the judgment of the County Court at Law #2, Smith County, Texas, in this case.

Respectfully submitted,

D. MATT BINGHAM
Smith County Criminal District Attorney

/s/ *Michael J. West*
Michael J. West
Asst. Criminal District Attorney
Bar I.D. No. 21203300
100 N. Broadway, 4th Fl.
Tyler, Texas 75702
(903) 590-1720
(903) 590-1719 (fax)

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the pertinent sections of the State's Reply Brief in the above numbered cause contain 4,082 words, an amount which complies with Texas Rule of Appellate Procedure 9.4 (i) (Vernon 2015).

/s/ *Michael J. West*
Michael J. West
Asst. Criminal District Attorney
Bar I.D. No. 21203300

20

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this __18th__ day of __September__ , 2015, the following have been completed:

(1) The original of the State's Response to Appellant's Brief in the above numbered cause has been sent via electronic filing to the Clerk of the Court of Twelfth Court of Appeals.

(2) A legible copy of the State's Response to Appellant's Brief in the above numbered cause has been sent via electronic filing to:

Mr. Jeffery Sanders
Attorney at Law
120 S. Broadway, Ste. 112
Tyler, Texas 75702

/s/ *Michael J. West*
Michael J. West
Asst. Criminal District Attorney
Bar I.D. No. 21203300

21