

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| CLIFTON RAY IKELER, | | No. 08-24-00355-CR |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| v. | | 143rd District Court |
| | § | |
| THE STATE OF TEXAS, | | of Reeves County, Texas |
| | § | |
| Appellee. | | (TC# 23-07-09172-CRR) |
| | § | |
| | § | |

**<u>MEMORANDUM OPINION</u>**

Appellant Clifton Ray Ikeler appeals his conviction for possession of methamphetamine, enhanced by two prior felony convictions. His sole issue challenges the trial court's denial of his motion to suppress, which contends that the police failed to follow their policy for impoundment (and inventory) of unattended vehicles. We affirm.

## I. BACKGROUND

Appellant was convicted of possession of more than four, but less than 200 grams of methamphetamine, enhanced by two or more prior felony convictions. He was sentenced to 35 years confinement. The only issue before us is whether an inventory search of his car which turned

1

up the drugs was permissible under the Fourth Amendment to the United States Constitution.[1] That issue turns on whether the inventory search of the car complied with the Pecos Police Department's policy. We confine our statement of background facts to that issue.

### A. Police perform an inventory search of Appellant's car after stopping and arresting him.

Sergeant Elizabeth Arenivaz, a 14-year veteran with the Pecos Police Department, worked the 6:00 pm to 6:00 am shift on January 28, 2023, in a marked police cruiser. In her pre-patrol briefing, she learned of an outstanding felony arrest warrant for Ikeler on an assault family violence charge. During her shift, she also learned that units were dispatch three times to his girlfriend's address to investigate claims of assault and terroristic threats. Around 3:30 in the morning she saw Ikeler drive by as she was parked on the side of the road. He was the sole occupant in the vehicle. Arenivaz followed Ikeler and called for backup to execute the arrest warrant.

After Arenivaz engaged her overhead lights, Ikeler did not immediately stop, but turned onto two different streets and then into the driveway of a residential home on Oleander Street. Arenivaz initially thought that Ikeler might flee, based on his reputation for doing so, and because he had turned quickly into a driveway without signaling, after having just made the turn onto Oleander Street. But Arenivaz, now supported by backup, quickly had Ikeler exit his car and made the arrest. When she informed him that his car would be towed, Ikeler asked Arenivaz to call his 81-year-old grandfather to come get the car. Arenivaz declined to call the grandfather and because no other person was there to take the car, she called a tow truck.

When a car is towed, Pecos Department policy requires that the officers conduct an inventory search to protect the vehicle owner's possession, and to protect the department over

---

[1] Appellant's Motion to Suppress only claimed that the search was improper under the 4th Amendment to the U.S. Constitution, and we confine our review to that argument. We express no opinion on whether the search was legal under the Texas Constitution, or how its protections might differ from the federal right.

claims of lost or stolen items. During the inventory search of Ikeler's car, the police discovered in the center console what was later determined to be 27.26 grams of methamphetamine.

## B. The Motion to Suppress

Ikeler moved to suppress the drugs found in the inventory search, claiming that the police should have not impounded his vehicle and thus should never have performed the inventory search. The argument is based on the Pecos Police Department's impoundment policy. That policy directs officers as to when they should tow vehicles. Separate sections address specific situations such as accidents, vehicles unattended for ten days, and abandoned vehicles. Appellant's motion relies on Paragraph I of the policy that states:

I. Removal from private property

1. No removal shall be ordered from private property.

2. Property or business owners may act immediately to have vehicles towed that are occupying a lot, area, space, building, or party thereof without permission of the owner.

He argues that his car was parked on private property, and the police made no effort to wake the property owner up to decide whether to tow the car.

Conversely, the State relies on paragraph A which reads:

A. Prisoner's vehicles

1. Vehicles belonging to arrested persons that are left at the scene of the arrest may be at substantial risk of theft or of damage to the vehicle or to personal property contained in the vehicle. It is, therefore, the policy of this department to tow all prisoner's vehicles to an impound lot at the owner's expense for protection of the vehicle except in the following situations:

   a. A friend or relative of the prisoner is at the scene, and the arrestee wishes to release the vehicle to that person provided the person possesses a current driver's license, and the arrestee consents to the release either in writing or on the audio/video in-car recording system.

   b. The arrestee agrees to lock and leave the vehicle in a legal parking space where a parking violation will not occur before arrangements can be made to recover the car.

2. The officer may have the vehicle towed if he or she believes the above methods of vehicle release would not properly protect the vehicle or its contents.

....

Paragraph E of the policy also allows officer to tow vehicles when they discover or have reports that a vehicle is "blocking a driveway or parking area, or obstructing or interfering with the movement on any driveway or parking area without the landowner's permission[.]"

Focused on Paragraph A, the State argued that Ikeler was arrested after he parked the vehicle in a private driveway, and there was no person there to take possession of the car, nor was it in a legal parking space. Focused on Paragraph E, the State urged that Ikeler's vehicle blocked in the property owner's cars, and the circumstances showed he did not park their with permission. Arenivaz conceded that she did not ring the doorbell of the house or know anything about the home's owners. But she did note that all the lights in the house were off, and Ikeler's car blocked in cars already parked there. During the arrest process, Ikeler never claimed that the house where he parked was familiar to him, such as a family or friend's residence. Ikeler did not ask to leave the car parked at the residence, or alert the residents to the vehicle. He did state that he was out driving that early morning to get some food. Arenivaz was familiar with Ikeler, including where he lived, his girlfriend and where she lived, and his criminal history. Arenivaz knew that the residence was not one of Ikeler's known hangouts.[2]

The State additionally notes that paragraph A allows officers some discretion to impound a vehicle if "the above methods of vehicle release would not properly protect the vehicle of its contents." Arenivaz testified at the suppression hearing that she believed she was following department policy to impound the vehicle.

---

[2] Just prior to the suppression hearing, Arenivaz contacted the homeowners who confirmed that they did not know Ikeler, and he would not have had permission to park in their driveway.

### C. The trial court's ruling

The trial court denied the motion to suppress and entered fact findings, the most relevant here include:

4. As Defendant slowed to stop, he pulled into a residential driveway not open for public parking and stopped behind other vehicles parked under a carport and blocking one in.

5. Defendant was arrested and taken to jail and his vehicle, which was lawfully acquired by the police officers and could not be protected by any means other than by impoundment, was impounded after an inventory search was conducted per department policy conducted by an officer or his or her agent, using a standard inventory form prepared pursuant to standard procedures.

## II. STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress for an abuse of discretion, using a bifurcated standard of review. *State v. Torres*, 666 S.W.3d 735, 740 (Tex. Crim. App. 2023). "On the one hand, we afford almost total deference to the trial court's determination of historical facts and the trial court's rulings on mixed questions of law and fact, especially when those determinations are based on an assessment of credibility and demeanor." *Id.* "On the other hand, we review pure questions of law, as well as mixed questions of law and fact that do *not* turn on an assessment of credibility and demeanor, on a de novo basis." *Id.* at 740–41.

When the trial court makes findings of fact, we determine whether the evidence, viewed in the light most favorable to the court's ruling, supports those findings. *See Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013). The prevailing party is afforded the "strongest legitimate view of the evidence," along with all reasonable inferences that can come from it. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013), (quoting *State v. Weaver*, 349 S.W.3d 521, 525 (Tex. Crim. App. 2011)).

### III. CONTROLLING LAW

"Pursuant to the Fourth Amendment, a warrantless search is *per se* unreasonable unless it falls within a warrant exception." *Marcopoulos v. State*, 538 S.W.3d 596, 599 (Tex. Crim. App. 2017). One of those exceptions is an inventory search: a police officer's inventory of the contents of an automobile is permissible under the Fourth Amendment if conducted pursuant to a lawful impoundment of the vehicle. *South Dakota v. Opperman*, 428 U.S. 364, 373–74 (1976) ("The decisions of this Court point unmistakably to the conclusion reached by both federal and state courts that inventories pursuant to standard police procedures are reasonable."); *Benavides v. State*, 600 S.W.2d 809, 810 (Tex. Crim. App. [Panel Op.] 1980). Inventory searches protect (1) the vehicle owner's property while the vehicle is in custody, (2) the police against claims or disputes over lost or stolen property, and (3) the police from potential danger. *Opperman*, 428 U.S. at 369. But an inventory search must be conducted in good faith and pursuant to reasonable standardized police procedure. *Colorado v. Bertine*, 479 U.S. 367, 374 (1987); *Opperman*, 428 U.S. at 372. The inventory search must be designed to produce an inventory of the vehicle's contents and must not be a "ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990).

The State carries the burden of establishing that the police conducted a lawful inventory search. *See Gauldin v. State*, 683 S.W.2d 411, 415 (Tex. Crim. App. 1984) (en banc), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681 (Tex. Crim. App. 1991) (en banc); *Evers v. State*, 576 S.W.2d 46, 50 & n. 5 (Tex. Crim. App. [Panel Op.] 1978). The State satisfies this burden by demonstrating that (1) an inventory policy exists and (2) the officers followed the policy. *Moberg v. State*, 810 S.W.2d 190, 195 (Tex. Crim. App. 1991) (en banc) ("[t]o be lawful, an inventory search must not deviate from police department policy."). The State is not required to

prove that the impoundment and subsequent inventory was the least intrusive means of securing the vehicle and keeping it safe. *See Bertine*, 479 U.S. at 373–74 (quoting *Illinois v. Lafayette*, 462 U.S. 640, 647 (1983)). Nor must the State prove that the officers independently investigated possible alternatives to impoundment. *Dominguez v. State*, No. 08-00-00455-CR, 2001 WL 815053, at *3 (Tex. App.—El Paso, July 19, 2001) *cert. denied*, 546 U.S. 1104 (2006).

## IV. APPLICATION

On appeal, Ikeler advances two main arguments. First, he urges that the search violates Paragraph I of the department policy because the officers initiated the impoundment while the car was on private property, rather than having the property owner do so. Second, Ikeler argues that the Paragraph A "Arrest" provision was also violated because the car, while parked in a private drive, was in a "legal parking space where a parking violation [would] not occur before arrangements can be made to recover the car." Under that argument, Ikeler contends there is no evidence that his grandfather could not have come to the scene and recovered the vehicle before the property owners could complain of the car, nor any evidence that the property owners would have objected to Ikeler's car in the first place.

One problem with Ikeler's argument is that it omits any discussion of Paragraph E of the department's policy that permits the police to tow a vehicle that is "blocking a driveway or parking area, or obstructing or interfering with the movement on any driveway or parking area without the landowner's permission[.]" One of the trial court's findings of fact tracks that provision: "As Defendant slowed to stop, he pulled into a residential driveway not open for public parking and stopped behind other vehicles parked under a carport and blocking one in." Focused on that paragraph, the trial court's decision can be upheld if there is evidence in the record supporting a finding that Appellant's vehicle (a) was blocking in a vehicle (b) without the landowner's

7

permission. There is no dispute that Ikeler blocked in a vehicle at the Oleander address. The remaining question is consent.

The record contains evidence from which the trial court could reasonably infer the owners of the Oleander address did not give Ikeler permission to park. The lights were off in the house and no one appeared to be awake. Arenivaz knew that Appellant did not live there, his girlfriend did not live there, and it was not a place that he frequented. At the scene, he made no claim he the knew the occupants, and in fact said he was out driving looking for food. The manner in which he pulled into the drive (not using a blinker, and shortly after turning on Oleander) suggests he used the drive as a means to evade detection.

The facts here parallel those in *Mayberry v. State*, where officers arrested a defendant after he exited the car parked in a private driveway and no one was available to take possession of the car. 830 S.W.2d 176, 180 (Tex. App.—Dallas 1992, pet. ref'd). In that case, there was no evidence of who occupied the residence or whether the defendant was permitted to leave the car in the driveway. *Id.* In upholding the inventory search of the car, the court distinguished the situation where a car is parked in a commercial parking space versus a private residential driveway. *Id.* at 181. A commercial property owner might not be surprised to find a car parked in a space provided for that purpose; a homeowner might be well surprised to find a strange car in their driveway, particularly if it blocks in their own means of transportation.

Another problem with Ikeler's argument is that it does not address subpart 2 of Paragraph A that allows an officer some discretion to impound a vehicle following an arrest if the officers believe "the above methods of vehicle release would not properly protect the vehicle or its contents." One of the trial court's findings mirrors that provision: "[Appellant's] vehicle, could not be protected by any means other than by impoundment." We find support for that finding in

the record. For the reasons set out above, the property owners at the Oleander address had no connection to Ikeler and would have awakened to find his car blocking their own. The police could have concluded this presented a risk to Ikeler's vehicle. Ikeler counters by arguing that the State produced no evidence that his grandfather could not have retrieved the car before the Oleander residents complained about it, or that the Oleander residents would have complained at all. We think this misallocates the burden of proof.

"The State satisf[ies] its burden concerning inventory through the testimony of the officers that (1) an inventory policy existed and (2) that policy was followed." *Evers v. State*, 576 S.W.2d 46, 50 n. 5 (Tex. Crim. App. [Panel Op.] 1978). If, after the State makes these showings, a defendant wishes "to appeal the policy or alleged deviation from that policy, then [she] must develop the record." *Evers*, 576 S.W.2d at 50 n. 5; *see also Mayberry*, 830 S.W.2d at 181 ("If appellant wanted to inquire about the substance of this policy and raise specific questions regarding its validity, he was free to do so. In the absence of any evidence to the contrary, we conclude that this testimony was sufficient to establish . . . departmental policy."). Arenivaz testified that she followed the policy, including Paragraph A(2). Having done so, it was incumbent on Ikeler to show that the trial court abused its discretion in finding that Arenivaz did not validly exercise her discretion in applying that policy.

For inventory searches the "allowance of the exercise of judgment based on concerns related to the purposes of an inventory search does not violate the Fourth Amendment." *Florida v. Wells*, 495 U.S. 1, 4 (1990) ("there is no reason to insist that [inventory searches] be conducted in a totally mechanical 'all or nothing' fashion"). An inventory search policy must be designed to "produce an inventory" and not become a "ruse for a general rummaging in order to discover incriminating evidence." *Id*. On the record before us, the police stopped and arrested Ikeler on a

9

family violence charge, and not a drug offense. Nothing in the record compels the conclusion that the inventory search was a ruse looking for evidence, or that the police abused their limited discretion in applying Paragraph A(2).[3]

The only other argument that Ikeler makes to counter the police's proper application of Paragraph E or A(2) is his contention that the search violated Paragraph I. Would a violation of Paragraph I negate compliance with two other impoundment provisions? We conclude otherwise. Viewed in a vacuum, Paragraph I might conflict with either paragraph A or E. Paragraph I says that only a *private property owner* can initiate a tow when the vehicle is on private property. Conversely, Paragraph A says *the police* must impound a vehicle following an arrest, unless one of two exceptions is met. Common sense dictates that some arrests occur on private property. And the record supports the State's contention that persons evading arrest will sometimes pull into private driveways to avoid detection. Under Ikeler's view, an officer making an arrest on private property could never initiate a tow, and would always need to rely on the owner to do so.

Similarly, Paragraph E allows the *police* to impound a vehicle if it is "blocking a driveway or parking area, or obstructing or interfering with the movement on any driveway or parking area without the landowner's permission[.]" Yet Paragraph I puts to onus on the private property owner to initiate the tow.

Ikeler does not provide a framework for how this Court—much less an officer in the field at 3:30 in the morning—would resolve possible conflicts in the impoundment policy. For statutes, administrative regulations, and contracts, we are often directed to avoid reading provisions in isolation, but rather required to harmonize text to avoid conflicts and give effect to all provisions so that none will be meaningless. *See State v. Hardin*, 664 S.W.3d 867, 873 (Tex. Crim. App.

---

[3] Because we uphold the trial court's finding under Paragraph A(2), we find no need to address Appellant's claim under A(1) that his vehicle was in a "legal parking space" because it was a private driveway.

10

2022) (so stating for criminal statute); *Mosaic Baybrook One, L.P. v. Simien*, 674 S.W.3d 234, 255 (Tex. 2023) (administrative regulation); *MCI Telecommunications Corp. v. Texas Utilities Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999) (contract construction). Applying that rubric, we can harmonize Paragraphs I, A, and E.

Paragraph I broadly applies to the *place* where a tow might be required (private property). But Paragraph A applies to a narrower *event*—when an arrestee is in an automobile and no one is present and qualified to take possession of the vehicle. Similarly, Paragraph E describes the specific *event* where a vehicle, whether on private property or not, blocks "a driveway or parking area, or obstructing or interfering with the movement on any driveway or parking area without the landowner's permission[.]" Here, we harmonize these provisions by concluding the narrower rules apply over the more general one. *See In re Dotson*, 76 S.W.3d 393, 395 (Tex. Crim. App. 2002) (en banc) ("One of our general rules of statutory construction is that a more specific statute or rule will prevail over a more general one."); *Cheney v. State*, 755 S.W.2d 123, 126 (Tex. Crim. App. 1988) (en banc) (collecting cases for the same proposition). Paragraph I might apply to general circumstances when a vehicle is on private property, but Paragraphs A or E, apply to the less common, but more specific events, of either an arrest occurring on private property or a vehicle parked so as to obstruct the use of another's vehicle.

We reject the view that we must read Paragraph I of the policy in isolation, and from that, conclude the trial court abused its discretion in not finding a violation of the department's impoundment policy. We conclude that the trial court did not abuse its discretion in finding that the police complied with Paragraphs A(2) and E in ordering the impoundment, and related inventory search.

## V. CONCLUSION

We overrule Ikeler's sole Issue and affirm the judgment of conviction below.

MARIA SALAS MENDOZA, Chief Justice

July 31, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.

(Do Not Publish)